[Civ. No. 9215.   Third Dist.   June 5, 1958.]

COBBLEDICK-KIBBE GLASS COMPANY (a Corporation), Appellant, v. EMMETT L. PUGH, Respondent.

McGilvray, McGilvray & Cameron for Appellant.

E. L. Means and Oliver J. Northup, Jr., for Respondent.

VAN DYKE, P. J.—Plaintiff-appellant brought action against defendant-respondent to recover money due for materials furnished and installed in accordance with a written proposal accepted by respondent. The proposal, a filled-in form used by appellant, provided that appellant would furnish and install certain plate glass and Thermopane glass for use in respondent's place of business for the sum of $1,546. The answer of respondent asserted breach of warranty and fraud. The trial court found no warranty but held that the contract had been induced by fraud and allowed damages in a sum exceeding the contract price. This appeal followed.

While respondent was engaged in improving his place of business, he determined to investigate the advisability of using Thermopane glass for the purpose of floral display under refrigeration. He planned to build the display case so that it would form a part of the exterior wall of his store. He had used an evaporatively-cooled display case inside his store and had had trouble from condensation of moisture on the glass, preventing visibility. This he wished to avoid.

He called a representative of appellant to visit him at his place of business and discuss the use of Thermopane, which is a product dealt in by appellant consisting of two or more glass plates separated by an air space. The representative did so and when the requirements of respondent had been explained to him, and he had been asked if Thermopane would prevent condensation of moisture on the glass, he replied that he did not know. Respondent requested him to investigate the matter by taking it up with his principal. This the representative did and reported that Thermopane would be suitable for respondent's purpose and particularly that it would be condensation free so that the flowers on display could be viewed from without the store by persons passing along the sidewalk, as well as by persons entering the store and viewing the display from within. The representative told respondent that in his inquiries he had checked with four or five ''big shots'' in appellant's organization and they had told him there would be no condensation on Thermopane. The falsity of these representations were sufficiently shown. For instance, the only person the representative had talked with was his superior and he had not been told by him that the glass if used would be free from condensation. The evidence sufficiently supported a conclusion that the display case was often so covered with condensation as to make it useless for display purposes.

The written contract on its face recited that appellant proposed to furnish and install the wanted material for the stated price, and contained the following: ''IMPORTANT: The general conditions set forth on the reverse hereof are a part of this proposal.'' Turning to the reverse side of the form, the following appears: ''CONDENSATION: Because of its numerous and uncontrollable causes, we shall not be responsible for the formation of condensation or frost on glass.'' The form was given to and left with respondent by the same representative who had made the representations to him concerning condensation and respondent kept the form with him for several days before signing a written acceptance in a space on the face of the form. Respondent testified that he did not see and did not read the statement concerning condensation on the reverse side of the form; that the representative did not call his attention thereto, but repeated his representations concerning condensation at the time he left the form. When experience proved that the glass fogged up so badly as to defeat the purpose for which Thermopane had

been purchased and installed, respondent called the attention of appellant to the defect and the same representative who had dealt with respondent assured him that appellant would take steps to correct the condition as to condensation. This, however, was never done.

Appellant relies upon the rule that the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its subject matter which preceded or accompanied the execution of the instrument. (Civ. Code, § 1625.) Says appellant: To determine that the defendant is not able to recover for breach of warranty, but is able to recover damages for fraud and deceit, is to permit him to recover an alleged loss where he admittedly has been foreclosed; and if the judgment is allowed to stand the contract will be changed in respect of the very terms intended to set forth all the obligations on the part of the plaintiff concerning condensation. ▪ Appellant also relies on the rule stated in *Cobbs* v. *Cobbs*, 53 Cal.App.2d 780, at page 785 [128 P.2d 373], as follows: "In our opinion . . . a distinction must be made between . . . a parol promise . . . which by its very nature is superseded by the final writing, inconsistent with it, and a promise made with no intention of performing the same, not inconsistent with the writing, but which was the inducing cause thereof." Appellant cites several cases applying the foregoing rule. We think the rule in *Cobbs* v. *Cobbs* has no application. This is not a case where a promise is made inconsistent with the writing and not contained within it and where the action is on the written promise. The cross-action of respondent asserting fraud is not an action on the contract. It is an action ex delicto which affirms the contract but seeks damages for the fraud that induced its execution.

If, notwithstanding the recital on the back of the form, this contract was in fact fraudulently induced by the acts, statements and conduct of appellant's representative, appellant is responsible for the fraud. The real question revolves around the fact of reliance. ▪ Whether or not under the circumstances attending the inducement and execution of the contract respondent was entitled to and did rely upon the oral representations was a question of fact for the trial court. If he was so entitled to rely and did rely, he has been deceived. Respondent's negligence, if such it was in view of the dealings he had with appellant's representative, in

failing to read the reverse side of the form, will not as a matter of law prevent the visiting upon the appellant of the consequences of fraud. For even if respondent was careless, his very carelessness might well have been induced by his dealings with appellant's representative.

■ The record presents the following: Respondent stated to appellant's representative his desires to obtain a refrigerated showcase which would not be affected by condensation. The representative replied he did not know if Thermopane would effect the desired result. Respondent requested that he ascertain the fact from his superiors. The representative returned with statements that he had consulted his superiors and had been told by them that Thermopane would be condensation free. He then tendered to respondent for execution a written proposal form, without warning him that it contained a provision contrary to the representation. The trial court could properly hold this constituted a representation that the instrument contained nothing contrary to the representations made. We are bound by the trial court's finding as to the conduct of the representative, although the record discloses that he denied he had made any assertions that Thermopane would be free from condensation. Accepting the court's findings, the position of appellant is this: We knew respondent's special requirements and falsely asserted that Thermopane would meet them. We tendered a contract form which on its face contained nothing contrary to those assertions, but which on its back, among numerous other statements, contained an assertion that we would not be responsible if condensation occurred because condensation on glass occurs from numerous and uncontrollable causes. We renewed the representations at the very moment we left the form with respondent and did not call his attention to the contradiction on the back of the form. We accepted the executed contract knowing that in all probability it would not have been signed had respondent in fact read the provision on the back, and we now say that respondent's negligence prevents recovery for our fraudulent representations that induced the contract. The court could, as it did, hold to the contrary.

■ It is established in California that a person who has been induced to enter into a contract by fraudulent representations as to its contents may rescind or reform the contract. (On like grounds he may affirm the contract and plead the fraud defensively.) His negligence in failing to read the

contract does not bar his right to relief if he was justified in relying upon the representations. (*Security-First Nat. Bank* v. *Earp*, 19 Cal.2d 774, 777 [122 P.2d 900].) The above rules apply when there is sufficient evidence to support a finding made by the trial court that the terms of the contract were fraudulently represented to the party complaining of fraud and that he was justified in relying upon the representations. (*Security-First Nat. Bank* v. *Earp*, *supra*. See also for a case comparable on its facts and for a good discussion of the principle involved, *Kreate* v. *Miller*, 226 Ky. 444 [11 S.W.2d 99].) Although redress has often been refused to a party who claimed to have been induced by fraud to sign a contract whose contents were misrepresented to him, the reasons often given being that to grant such relief invites perjury and encourages negligence, nevertheless there is and can be no inflexible rule that relief in such cases cannot be given. As said by Cooley on Torts, 3d edition, page 934:

". . . The ways of fraud are infinite in their diversity, and if into any one of them all the law refuses to follow for the rescue of victims, it will be in the direction of that one that fraudulent devices will specially tend. It can never be either wise or safe to mark out specific boundaries within which deceits shall be dealt with, but beyond which they shall have impunity; but each case must be considered on its own facts, and every case will have peculiarities of its own, by which it may be judged."

We hold that the evidence presented by the record sufficiently supports the findings of the trial court that respondent was fraudulently induced to execute the contract.

■ Appellant contends further that the damages awarded are excessive and not justified by the evidence. We do not agree. There was testimony that not only was the display box utterly useless, but that respondent, in pursuit of his business, was compelled to have the same removed and other installations made for display purposes. The court applied the rule stated in section 3343 of the Civil Code, that:

"One defrauded in the purchase . . . of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction."

There was evidence that, in addition to receiving no value whatever, respondent was compelled to duplicate expenditures he had made in building the original display case; in

providing a display case in a different location and of different material; in making changes in the air conditioning system required by relocation of the case and in the relocation of lighting necessitated by the change, all special expense brought about as a result of the appellant's fraud. There was testimony that the total of these expenses, in addition to credit for the contract price, exceeded the $600 money judgment which the court allowed.

The record supports the judgment rendered, and the judgment is, therefore, affirmed.

Peek, J., and Schottky, J., concurred.