[No. C007537. Third Dist. Feb. 28, 1991.]

SYLVIA WEST, Cross-complainant and Appellant, v.
RON HENDERSON et al., Cross-defendants and Respondents.

COUNSEL

Burger & Flaherty, Michael Flaherty, Karen R. Leder and Kevin P. Whiteford for Cross-complainant and Appellant.

Robert J. Binns for Cross-defendants and Respondents.

OPINION

**NICHOLSON, J.**—Sylvia West's sandwich shop failed, and she moved out of the Sunray Plaza pad she had leased. The owner of Sunray Plaza sued for breach of the lease, and West cross-complained against the owner and The Henderson Group (Henderson), the leasing agent. Her cross-complaint was dismissed after the court determined West had not brought her action within the six-month limitation period provided for in the lease. On appeal, she argues the contractual limitation of actions is inapplicable because she seeks to rescind the lease based on Henderson's fraud in the inducement. In the alternative, she contends the six-month limitation of actions is unconscionable and should not be enforced.

We affirm the judgment against West. The parol evidence rule prevents her rescission of the lease because Henderson's alleged fraudulent misrepresentations are contradicted in the subsequent written lease. Furthermore, for reasons discussed later, the six-month limitation of actions was not unconscionable. Since the contractual limitation of actions was enforceable, the court properly concluded it barred West's action.

FACTS

In early 1985, West decided to open a sandwich shop in the Sunrise area of Sacramento. She found Sunray Plaza under construction and contacted

Henderson about leasing a pad. Henderson gave West a draft of the lease and notified her she would need a guarantor for the lease. Henderson eventually gave West a final lease which she took home and signed. She contacted her friend and former employer, James Johnston, who agreed to guarantee the lease. He also signed the lease as a principal. West finally returned the signed lease to Henderson. Although encouraged to do so by a prominent admonition in the lease, she did not consult an attorney concerning the terms of the lease before signing it.

The lease included a six-month limitation period for any action brought by West: "Any claim, demand, right or defense of any kind by Tenant which is based upon or arises in any connection with this Lease or the negotiations prior to its execution, shall be barred unless Tenant commences an action thereon, or interposes in a legal proceeding a defense by reason thereof, within six (6) months after the date of the inaction or ommission [*sic*] or the date of the occurrence of the event or of the action to which the claim, demand, right or defense relates, whichever applies."

West opened the sandwich shop on August 28, 1985. However, the business was not profitable and closed on October 31, 1986.

On September 30, 1988, the owner of Sunray Plaza commenced an action against West and Johnston for unpaid rent. West cross-complained against Henderson and others alleging fraud and other causes of action. The court granted summary judgment in favor of Henderson on West's cross-complaint.[1] This appeal challenges only the judgment entered against West on her cross-complaint.[2]

## DISCUSSION

West's main contention on appeal is the court erred by applying the six-month limitation of actions found in the lease to bar West's causes of action in her cross-complaint. West contends the limitation is unenforceable because she seeks to rescind the contract based on fraud in the inducement and because the limitation of actions provision is unconscionable under Civil Code section 1670.5 which gives courts authority to refuse to enforce or limit enforcement of unconscionable contracts or provisions in contracts.

---

[1] James Johnston, originally listed as an appellant in this case, has been dismissed on the court's own motion because he was not a party to the judgment below.

[2] The appeal has been dismissed with respect to all respondents except The Henderson Group and Ron Henderson, who are referred to collectively as "Henderson" in this opinion.

Henderson requests this court to take judicial notice of the stipulated judgment subsequently entered against West and Johnston on the original complaint. Since the judgment on the original complaint is not relevant to this appeal, we deny the request.

## A. Standard of Review

The trial court may grant a motion for summary judgment only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ "[A] defendant moving for summary judgment has the burden of negating every alternative theory of liability presented by the pleadings . . . ." (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 271, fn. 1 [179 Cal.Rptr. 30, 637 P.2d 266].) Any doubts as to whether the motion should be granted must be resolved in favor of the party opposing the motion. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) ■ On appeal, we review the motion independently applying the same standard under Code of Civil Procedure section 437c the trial court must apply. (*ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 311 [262 Cal.Rptr. 773].)

## B. Fraud in the Inducement

Viewing the facts most favorably to West, Henderson misrepresented three facts which West relied on in signing the lease. First, the lease would be for five years with two 5-year options, rather than fifteen years. Second, Johnston would be a guarantor, rather than a primary obligor. And third, Henderson would erect a sign near the street with the names of the businesses on the sign. Contrary to these representations, the term of the lease West signed was 15 years and included Johnston as a tenant, not a guarantor. In addition, West alleges the promised sign could not be erected because it would have violated a county ordinance. ■ Alleging fraud in the inducement, West seeks to rescind the lease, including the limitation of actions provision. However, Henderson asserts West cannot show fraud in the inducement because the parol evidence rule prevents introduction of the representations made before West signed the lease.

"Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." (Code Civ. Proc., § 1856, subd. (a).) The fraud exception to this parol evidence rule states: "This section does not exclude other evidence . . . to establish illegality or fraud." (Code Civ. Proc., § 1856, subd. (g).) Despite this pronouncement concerning the inapplicability of the parol evidence rule to evidence of fraud, the California Supreme Court has declared the fraud exception does not apply if the evidence is offered to show a promise contradicting the written agreement. (*Bank of America etc. Assn.* v. *Pendergrass* (1935) 4 Cal.2d 258, 263 [48 P.2d 659].) The *Pendergrass* decision, though criticized at times by some districts of the

Court of Appeal, remains the law. (*Continental Airlines, Inc.* v. *McDonnell Douglas Corp.* (1990) 216 Cal.App.3d 388, 418-421 [264 Cal.Rptr. 779].)

The lease includes an integration clause stating no prior agreement on any matter covered in the lease shall be effective.[3] The lease names Johnston as a tenant and sets the term at 15 years. These provisions contradict the prior agreements for a five-year lease with Johnston as a guarantor. The lease also prohibited any sign not approved in writing by the landlord. West's claim the prior agreement was for Henderson to put a sign near the street at the landlord's expense contradicts the lease provision stating West would pay for all signs. Furthermore, the lease gives West the obligation of obtaining "all necessary permits and approvals" for signs which West did not do.

West cites our decision in *Cobbledick-Kibbe Glass Co.* v. *Pugh* (1958) 161 Cal.App.2d 123 [326 P.2d 197], as support for the admissibility of her evidence of fraud. In *Cobbledick-Kibbe*, a glass supplier sold glass to a florist for a refrigerated floral display. The supplier told the florist there would be no problem with condensation on the glass display. However, on the back of the contract, the supplier disclaimed responsibility for condensation problems. The court, failing to acknowledge the *Pendergrass* rule, admitted the prior representations because the action was for fraud, not breach of contract. (*Id.* at p. 126.) Under the *Pendergrass* rule, the prior representations are admissible only if they are independent of or consistent with the written agreement. (*Pendergrass, supra*, 4 Cal.2d at p. 263; *Simmons* v. *Cal. Institute of Technology* (1949) 34 Cal.2d 264, 274-275 [209 P.2d 581].) In *Cobbledick-Kibbe*, the oral representations directly conflicted with the supplier's disclaimer of responsibility for condensation. Since *Cobbledick-Kibbe* conflicts with *Pendergrass*, the Supreme Court's decision in *Pendergrass* prevails.[4]

West's evidence of the three prior representations made by Henderson to induce her signing of the lease are not admissible. Having concluded West cannot prove fraud in the inducement, no further analysis is necessary as to whether rescission is available. ■ ■■ ■■ ■ ■ Accordingly, the trial

---

[3] Paragraph 31.J of the lease states: "This Lease contains all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreements or understanding pertaining to any such matters shall be effective for any purpose . . . ."

[4] While West argues we should apply *Cobbledick-Kibbe* and Henderson argues we should apply *Pendergrass*, neither party cites to the recent decision in *Continental Airlines, supra*, 216 Cal.App.3d 388, which quite accurately reviews the parol evidence rule's application in fraud cases and makes apparent *Pendergrass* is the controlling authority in this case. Even though *Continental Airlines* was decided over a year before oral argument on this case, neither party was able to discuss this instructive case with the court at oral argument.

court properly found West could not rescind the lease due to fraud in the inducement.[5]

## C. *Unconscionability of the Limitation of Actions Provision*

██ West next claims the limitation of actions provision of the lease is unconscionable and, therefore, should not be enforced. (Civ. Code, § 1670.5.) While this alleged unconscionability merits our consideration, we first recognize the courts have deemed similar provisions "reasonable." (*Capehart* v. *Heady* (1962) 206 Cal.App.2d 386 [23 Cal.Rptr. 851, 6 A.L.R.3d 1190] [three-month limitation]; *Beeson* v. *Schloss* (1920) 183 Cal. 618 [192 P. 292] [six-month limitation]; *Tebbets* v. *Fidelity and Casualty Co.* (1909) 155 Cal. 137 [99 P. 501] [three-month limitation].)

In *Capehart*, the lessee sued the lessor for damages arising from the lessor's breach of the lease. As a defense, the lessor pointed out the provision in the lease limiting the period during which the lessee could bring an action to three months from the offending act. The trial court enforced the limitation of actions provision and sustained the lessor's demurrer. (206 Cal.App.2d at pp. 387-388.) On appeal, the court applied the test for determining whether the provision was valid by asking whether the provision was "so unreasonable as to show imposition or undue advantage." (*Id.* at p. 388.) The court noted the lease was presented on a " 'take it or leave it' " basis and the limitation of actions provision limited only the lessee. Nonetheless, the court upheld enforcement of the provision because it was clear and distinct and because the lessee agreed to it. (*Id.* at pp. 390-391.)

In 1979, the Legislature passed Civil Code section 1670.5. Subdivision (a) of section 1670.5 provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." The legislative committee comment states section 1670.5 was enacted "to police explicitly against the contracts or clauses which they find to be unconscionable." There are no reported decisions in which California courts have applied section 1670.5 to a contractual limitation of actions.

The enactment of section 1670.5 expands our scrutiny of limitation of actions provisions from an analysis of the reasonableness of the provision to

---

[5] In her reply brief, West raises for the first time the issues of fraud in the execution and mistake as attempts to nullify the lease. However, we will not consider issues raised for the first time in the reply brief. (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250].)

the broader analysis of the conscionability of the provision. While the *Cape-hart* decision is relevant to our scrutiny of the provision in this case, we must apply the test for unconscionability as announced by the cases which have applied section 1670.5 to contract provisions other than those limiting actions. (See *A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 485-493 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].)

■ "[U]nconscionability has both a 'procedural' and a 'substantive' element." (*A & M Produce Co.*, *supra*, 135 Cal.App.3d at p. 486.) "The procedural element focuses on two factors: 'oppression' and 'surprise.' [Citations.] 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' [Citations.] 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." (*Ibid.*) The substantive element focuses on whether the contract or provision is overly harsh or one-sided and without justification. (*Id.* at p. 487.)

■ We do not regard the circumstances involved in signing the lease with the limitation of actions as oppressive. While West had no previous business experience and was not represented by an attorney, she does not assert she did not have the time to consult with an attorney. In fact, the lease stated, "CONSULT YOUR ATTORNEY," above the signature lines.

West asserts the lease was an adhesion contract. ■ An adhesion contract "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) This definition of an adhesion contract is comparable to the definition of oppression as stated above. Thus, a finding a contract is adhesive might, arguably, justify a finding the same contract is oppressive for the purpose of unconscionability review. ■ However, the lease was not an adhesion contract. West has failed to provide any evidence the limitation of actions provision is standard in other commercial lease agreements, an element necessary to a finding the contract is adhesive. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 711 [131 Cal.Rptr. 882, 552 P.2d 1178].)

This same lack of evidence concerning other lease agreements prevents us from concluding West held inferior bargaining power. If she could go to another lessor and get more favorable terms, she held a strong negotiating position against Henderson. (*Shadoan* v. *World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, 103 [268 Cal.Rptr. 207].)

The only oppression on West we perceive in the circumstances surrounding the signing of the lease was self-imposed. West was not in pursuit of life's necessities; this was a business venture. Knowing her own inexperience, she signed the lease without consulting an attorney (despite a prominent admonition in the lease to do so) and without investigating the suitability of the lease provisions for her business purposes.

Alleging unfair surprise as another way of satisfying the procedural element of unconscionability, West states the lease is twenty single-spaced pages and the limitation of actions provision is "an eighty-six word sentence designed to befuddle both the novice and the law school graduate alike." Twenty single-spaced pages contain a considerable number of terms and conditions; however, a commercial lease such as this necessarily entails agreement on many issues. The sheer bulk of those issues does not, alone, render agreement on any single issue unfairly surprising.

Similarly, a long sentence is not necessarily incomprehensible. Indeed, Civil Code section 1670.5, subdivision (a), upon which West relies is a 65-word sentence. West's opening brief contains many lengthy sentences, including a sentence of over 90 words which we think is quite clear. While we agree longer sentences are generally harder to understand and should be avoided, we do not agree the limitation of actions provision here was unclear enough to unfairly surprise West.

While not a model of clarity, the limitation of actions provision states in pertinent part: "Any claim . . . of any kind by Tenant . . . shall be barred unless Tenant commences an action . . . within six (6) months after . . . the event . . . ." A lessee reasonably attempting to protect her rights and serve her own best interests could have, quite easily, discerned the effect of this provision. Henderson never made any conflicting representation concerning a limitations period, and the provision appeared on the very page West signed. Even so, West claims she did not read that, or any other provision, before signing the lease. As this case demonstrates, loose business practices, such as failure to read, investigate, and negotiate a commercial contract, often impose significant and costly consequences. West apparently saw no reason to protect her own interests at the outset. We will not do so at this late stage. Parties to commercial contracts fail to read them at their own peril.[6]

█ While West has made a poor showing of procedural unconscionability, we will go on to a substantive analysis because a compelling showing

---

[6] "One who signs or accepts a written instrument without reading it with care is likely to be surprised and grieved at its contents later on." (3 Corbin, Contracts (1960) § 607, p. 656.)

of substantive unconscionability could, foreseeably, overcome the weaker showing of procedural unconscionability. (*A & M Produce Co., supra*, 135 Cal.App.3d at p. 487.)

 Substantive unconscionability relates to the effect of the contract or provision. The effect here is to limit West, but not the lessor, to a six-month period within which she must commence an action for any alleged wrong. The lack of mutuality makes the provision suspect under our analysis. We see no reason why the six-month period could not have been drafted to apply to both parties. Accordingly, there should be some justification for this one-sidedness.

In discussing the reasonableness of a three-month period in *Capehart*, the court noted the undesirability of tying up property during litigation as a justification for a three-month limitation period applicable only to the lessee. (*Capehart, supra*, 206 Cal.App.2d at p. 390.) Pending litigation initiated by the lessee could inhibit the lessor's ability to lease the property to another party, while pending litigation by the lessor against the lessee would probably not have the same consequences. We believe this reasoning sufficiently justifies the bargained-for six-month limitation on West.

To support her position the limitation on actions was unconscionable, West presents a hypothetical situation. Under the limitation of actions provision, the lessor could bring an action after the six-month period had run and be immune to any defense raised by the lessee. While this possible liability without defenses seems unjustifiably inequitable, we reject this hypothetical observation as a reason to find the provision substantively unconscionable. Civil Code section 1670.5 gives a court power to refuse to enforce an offending clause. Thus, if a lessor were to bring an action against a lessee and assert this provision as a bar to any defense on the part of the lessee, a court could refuse to enforce it. The limitation of defenses is irrelevant to this case because it is not being asserted against West and could be subject to unconscionability review separately.

The Legislature, in enacting section 1670.5, has molded a powerful tool for the courts to prevent oppression and unfair surprise. However, used unwisely, this tool can cause chaos and uncertainty. Seneca said, "Men [and women] consider some things to be unjust because they did not deserve them, some merely because they did not expect them." (A Dict. of Legal Quotations (1987) p. 58.) West's expectations would have been more realistic if she had but read the lease. We conclude the limitation of actions provision of the lease was not unconscionable when West signed the lease. She assented to a shorter period for bringing actions, and she is now bound.

## D. *Running of Time for Commencing an Action*

▇ In a footnote, West argues the court improperly calculated the accrual of her fraud cause of action by determining the period within which she could bring an action began to run when she vacated the shop. She contends the discovery provision of Code of Civil Procedure section 338, subdivision (d), should have been applied to begin the period for bringing an action for fraud when she discovered the fraud, which she asserts occurred "within a few weeks of the date West's cross-complaint was filed."[7] The only three allegations of fraud she has presented for our review are the representations concerning the sign near the street, the five-year lease, and Johnston's status as a guarantor. Even assuming the statutory discovery rule may properly be applied in this case, the trial court correctly determined the latest date West could have discovered the facts constituting fraud was when she vacated the shop. Almost two years passed between the time she vacated and the filing of the original complaint in this action. West's contention lacks merit.

### Conclusion

Since Henderson has successfully raised the limitation of actions provision in the lease as a defense, it has carried its "burden of negating every alternative theory of liability presented by the pleadings . . . ." (*Bell, supra,* 30 Cal.3d at p. 271, fn. 1.) The trial court properly granted the motion for summary judgment.

### Disposition

The judgment is affirmed.

Sims, Acting P. J., and Marler, J., concurred.

A petition for a rehearing was denied March 26, 1991.

---

[7] Code of Civil Procedure section 338, subdivision (d), provides for a three-year statute of limitations in "[a]n action for relief on the ground of fraud or mistake. The cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."