Mark ULBRICH, Plaintiff,

v.

OVERSTOCK.COM, INC., Defendant.

Case No. 12–cv–2060 YGR.

United States District Court, N.D. California.

Aug. 15, 2012.

Troy A. Valdez, Amy Todd–Gher, Valdez Noor Todd & Doyle LLP, San Francisco, CA, for Plaintiff.

Jonathan Edward Sommer, Julie Lynn Fieber, Stein & Lubin LLP, San Francisco, CA, for Defendant.

### ORDER GRANTING MOTION FOR STAY PENDING ARBITRATION AND DENYING MOTION, IN THE ALTERNATIVE, TO DISMISS

YVONNE GONZALEZ ROGERS, District Judge.

Plaintiff Mark Ulbrich ("Ulbrich") brings this action against Defendant Overstock.com, Inc. ("Overstock") for fraud and declaratory relief. Plaintiff alleges claims for common law fraud, violation of Califor-

nia Labor Code § 970, declaratory relief concerning confidentiality agreements, and unfair business practices under California Business & Professions Code § 17200.

Overstock filed a Motion to Stay the action pending arbitration or, alternatively, to dismiss the complaint under Rules 12(b)(6) and 9(b). Having carefully considered the papers submitted, the admissible evidence, the pleadings in this action, and the arguments of counsel, and for the reasons set forth below, the Court hereby GRANTS the Motion to Stay the action pending resolution of the arbitration and DENIES the Motion In the Alternative to Dismiss the Complaint Under Rules 12(b)(6) and 9(b) for Failure to State a Claim as moot.

## SUMMARY OF FACTS

Ulbrich filed his complaint in San Francisco Superior Court on March 21, 2012. On or about April 25, 2012, Overstock removed the action based upon diversity grounds. The facts stated here are drawn from Ulbrich's declaration in opposition to the motion and from the allegations of the complaint, which the Court takes to be true for purposes of this motion.

Ulbrich alleges that he began developing an e-commerce local coupon business, "3Coup." He developed a business plan, engaged legal counsel, and obtained advice regarding funding. He began meeting with numerous brokers and dealers concerning a sales agreement, including meeting with Overstock. In October 2010, he approached Overstock's vice president (Popelka) about integrating 3Coup with Overstock's existing customer base, and Popelka expressed interest. Ulbrich met with Popelka and others at Overstock in January 2011 to discuss and present his business plan. One of those Overstock employees, a senior vice president named Simon, said that Overstock's CEO had di-

rected key employees to develop a plan for entering the daily coupon business.

Ulbrich met again with Overstock executives in February 2011, including the Overstock CEO, Byrne. Ulbrich pitched a strategic partnership between Overstock and 3Coup. He offered Overstock the opportunity to invest in the company in return for access to Overstock's customer list. Overstock was not interested in sharing its private customer list, and instead offered Ulbrich a salaried position at Overstock, including benefits, bonuses, and profit-sharing. When Ulbrich expressed hesitation at joining the company, moving, and giving up other broker-dealers' interest in the 3Coup business, Byrne promised that Ulbrich would be given all the necessary resources to develop the 3Coup business from within Overstock and he would be fully supported to develop and launch it. Based upon these disclosures and representations, UIbrich decided to forego plans to create an independent company and accept Byrne's offer.

Negotiations continued from February 2011 through April 2011 concerning the employment terms. Ulbrich ultimately accepted the offer and arrived in Utah on May 3, 2011, ready to begin his employment with Overstock in Utah.

Ulbrich alleges that, on that first day of work, he was given a Welcome/New Hire Packet by an employee in Overstock's Human Resources ("HR") department. The packet included several documents, including a document entitled "Employment, Confidential Information and Invention Assignment and Arbitration Agreement." The HR representative told him to read, sign and return all the new hire documents. He questioned the HR representative about part of the agreement, Paragraph 3, which related to "Prior Inventions," and was told that that section applied only to employees who had exist-

ing patents. He did not ask about the arbitration agreement.

Ulbrich alleges that he entered into this agreement based on the representations Overstock had previously made about the position, not knowing at the time that Overstock never intended to fulfill the promises it made. He alleges that Overstock used these agreements to unfairly and illegally gain control of his business plan and remove him as a potential competitor.

Shortly thereafter, Ulbrich learned Overstock was considering purchasing other local coupon businesses, and that he was not receiving the capital or resources he was promised to develop 3Coup. In August 2011, Overstock cancelled the limited development resources it had been providing and essentially shut down the 3Coup project. Overstock informed Ulbrich that it was changing the scope of the project and had brought in another individual to develop a similar, directly competing project for Overstock. In October 2011, Overstock advised Ulbrich that it was not interested in entering into the local coupon business any longer and was cancelling the 3Coup project. Overstock offered Ulbrich a position in a different capacity, with a reduced salary. Ulbrich declined and requested release from his non-compete agreement and access to his business model and intellectual property. Overstock refused.

Ulbrich alleges claims for: (1) fraud and deceit in inducing him to move to Utah with his spouse and forego other opportunities to develop 3Coup; (2) fraud under Cal. Labor Code § 970 for a false statement to induce an employee to relocate from California; (3) declaratory relief that the non-competes and confidentiality agreements are unconscionable and unenforceable; and (4) unfair, unlawful or fraudulent business practices under California Business & Professions Code § 17200.

## STANDARDS APPLICABLE TO THIS MOTION

The FAA requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. In ruling on the motion, the Court's role is limited to determining whether: (1) an agreement between the parties to arbitrate exists; (2) the claims at issue fall within the scope of the agreement; and (3) the agreement is valid and enforceable. *Lifescan, Inc. v. Premier Diabetic Services, Inc.,* 363 F.3d 1010, 1012 (9th Cir.2004); *see also Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1119 (9th Cir. 2008).

Section 2 of the FAA provides that arbitration clauses may be invalidated based "upon the same grounds as exist in law or in equity for the revocation of any contract," such as fraud, duress or unconscionability. 9 U.S.C. § 2, *see also Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. ——, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). However, the FAA preempts any state-law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *AT & T Mobility LLC v. Concepcion,* 563 U.S. ——, 131 S.Ct. 1740, 1745–47, 179 L.Ed.2d 742 (2011). Because of the strong policy favoring arbitration, doubts are to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

## ANALYSIS

### I. Choice of Law

First, as to the choice of law analysis, California choice of law principles apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020,

85 L.Ed. 1477 (1941). California courts follow the *Restatement (Second) of Conflict of Laws* ("Restatement") § 187(2), which reflects a strong policy favoring the enforcement of such provisions. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464–65, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). Enforceability of a choice of law provision is a three-step analysis. First, the Court must determine whether the chosen state in the choice-of-law provision either has a substantial relationship to the parties or transaction or is premised upon some other reasonable basis. *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App.4th 1425, 1446, 140 Cal.Rptr.3d 38 (2012). Next, if either of these is met, the court must decide whether the chosen state's law is contrary to a fundamental policy of California. *Id.* Finally, if there is a conflict between the laws, the court must then determine whether the chosen state has a materially greater interest than California. *Id.* "If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." *Nedlloyd*, 3 Cal.4th at 466, 11 Cal.Rptr.2d 330, 834 P.2d 1148. The state with the materially greater interest is the state which, "in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1003 (9th Cir.2010); *see also Captain Bounce, Inc. v. Bus. Fin. Services, Inc.*, 2012 WL 928412 (S.D.Cal. Mar. 19, 2012).

Here, the Court finds that, as to the first part of the test, Utah has a substantial relationship to the transaction at issue. However, California law regarding enforcement of arbitration agreements conflicts with Utah law in significant respects. While Utah law seems to be similar in terms of considering procedural and substantive unconscionability to determine enforceability of an arbitration agreement, Utah's interpretation of what is or is not substantively unconscionable departs significantly from California law. Compare *Miller v. Corinthian Colleges, Inc.*, 769 F.Supp.2d 1336, 1345 (D.Utah 2011) (fact that the arbitration agreement effectively only requires arbitration of one side's claims is not enough to find substantive unconscionability) with *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 725–26, 13 Cal. Rptr.3d 88, 105 (2004) (arbitration agreements imposed in adhesive context lacks substantive fairness if it requires one party but not the other to arbitrate all claims arising out of the same transaction or occurrence) and *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (same).[1]

The Court further finds that these differences reflect a strong California policy in favor of protecting its citizens from enforcement of agreements that do not comport with California unconscionability standards, and that California has a materially greater interest than Utah in the determination of whether a California citizen should be required to submit his employment-related claims to arbitration. *See Fitz*, 118 Cal.App.4th at 725–26, 13 Cal.Rptr.3d 88; *see also Bridge Fund*

---

1. Ulbrich argues that there are also significant differences between Utah and California law with respect to his underlying claims. However, considerations about the other issues in the case are not relevant to the choice of law on the arbitration issue. *Washington Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 920, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001) ("separate conflict of laws inquiry must be made with respect to each issue in the case"). Thus, the Court's ruling on the choice of law issue with respect to enforceability of the arbitration agreement has no bearing on which state's law will apply to the underlying claims.

*Capital,* 622 F.3d at 1003. Therefore, the Court applies California law to the question of enforceability of the arbitration agreement here.[2]

## II. Scope of the Arbitration Provision

■ Ulbrich argues that his claims for fraudulent inducement, and unfair business practices based upon that fraud, are not subject to the terms of the arbitration agreement. He argues that the agreement's scope is narrow and could not include claims based on misrepresentations occurring prior to the execution of the agreement.

■ It is an essential principle of arbitration that a party cannot be required to arbitrate a claim that it has not agreed to arbitrate. *AT & T Tech. Inc. v. Communs. Workers of Am.,* 475 U.S. 643, 648–50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). However, to require arbitration, the allegations of the complaint need only "touch matters" covered by the agreement containing the arbitration provision, and "all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir.1999).

■ The terms of the agreement here are that Ulbrich agreed to arbitrate " . . . any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement." An agreement which contains an arbitration clause covering disputes "arising out of or relating to the contract or breach thereof" encompasses tort claims having their roots in the contractual relationship between the parties including fraudulent inducement claims. *EFund Capital Partners v. Pless,* 150 Cal.App.4th 1311, 1323, 59 Cal.Rptr.3d 340 (2007) (citing cases); *see also Prima Paint Corp. v.*

*Flood & Conklin Mfg. Co.,* 388 U.S. 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (fraudulent inducement claim was required to be arbitrated under an agreement to arbitrate "(a)ny controversy or claim arising out of or relating to this Agreement, or the breach thereof"); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (district court faced with a fraudulent inducement claim that runs to the *entire* contract, rather than just the arbitration provision, must refer that claim to the arbitrator). The fraudulent inducement-related claims here all arise from the contractual relationship between Ulbrich and Overstock. Likewise the declaratory relief claim arises directly from that relationship. Consequently, the Court finds that the arbitration agreement encompasses the claims herein.

## III. Enforceability of the Arbitration Provision Under California Law

Ulbrich argues that the arbitration provision should not be enforced because it is unconscionable. Section 2 of the FAA provides that arbitration clauses may be invalidated based "upon the same grounds as exist in law or in equity for the revocation of any contract," such as fraud, duress or unconscionability. 9 U.S.C. § 2; *Rent–A–Center,* 561 U.S. ——, 130 S.Ct. at 2776.

■ has both a procedural and substantive element. *Armendariz v. Found. Health Psychcare Services, Inc.,* 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745, 6 P.3d 669 (2000). The procedural element is concerned with oppression or surprise arising from unequal bargaining power, while the substantive element is focused on whether the terms

---

**2.** The Court notes that the choice of law question ultimately is not decisive here, for the reasons stated in Section III, below.

of the agreement are overly harsh or lacking in mutuality. *Id.*

In order to demonstrate that the arbitration provision should not be enforced due to unconscionability, there must be some showing of both substantive and procedural unconscionability. They need not be present in the same degree, and a strong showing on one can overcome a relatively weak showing on the other. *Armendariz*, 24 Cal.4th at 114, 99 Cal. Rptr.2d 745, 6 P.3d 669; *see also Nagrampa*, 469 F.3d at 1284 (where party with stronger bargaining power drafted agreement and presented on a take-it-or-leave-it-basis, minimal showing of procedural unconscionability warranted analysis of the substantive prong); *West v. Henderson*, 227 Cal.App.3d 1578, 1587, 278 Cal.Rptr. 570 (1991) (minimal showing of procedural unconscionability justified looking to substantive factors). "[E]ven if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale and render the arbitration provision unconscionable." *Nagrampa*, 469 F.3d at 1281. However, the complete absence of one element precludes a finding that the agreement should not be enforced for unconscionability. *Armendariz*, 24 Cal.4th at 114, 99 Cal. Rptr.2d 745, 6 P.3d 669.

## A. Procedural Unconscionability

Here, the Court cannot find even minimal procedural unconscionability. The evidence is that Ulbrich approached Overstock with a business idea. He engaged in lengthy negotiations, aided by his counsel, which ultimately resulted in his being hired as an employee, with profit-sharing and other terms not typical of most employees. True, Ulbrich did not negotiate the terms of the arbitration provision, and was not aware that such an agreement would be asked of him by Overstock before he arrived on his first day of work. However, no evidence has been presented to suggest that Ulbrich could not have negotiated with Overstock regarding this term if he had so requested, just as he had negotiated the other terms of his employment agreement. Nor does the evidence support a finding that any other form of oppression or surprise was used to obtain his agreement to the arbitration provision. Ulbrich declares that he felt "compelled" to sign the agreement, but offers no facts to support that bald assertion, nor does the totality of the facts here lend it any credibility. To the contrary, Ulbrich states that he was given a large stack of documents to review and sign by an assistant in HR and that he sought her out only to ask questions about the Prior Inventions agreement. (Ulbrich Dec. at ¶ 15–20.) He did not ask any questions or express any concerns about the arbitration agreement at the time. Nothing suggests that Overstock coerced or duped Ulbrich into signing the arbitration agreement.

Simply observing that Ulbrich is one person and Overstock is a large corporation does not tip the balance toward finding procedural unconscionability. If it did, any individual or small business entering into a contract with a larger company could assert procedural unconscionability, regardless of whether the parties actually negotiated the terms therein on relatively equal footing.

Finally, Ulbrich argues that procedural unconscionability exists because when he signed the agreement, Overstock did not provide a copy of the arbitration rules referenced therein. More specifically, the agreement states that arbitration will proceed under "the rules then in effect of the American Arbitration Association ["AAA"]." (Ulbrich Dec. Exh. B at ¶ 9.) Under general California rules of contract interpretation, matters like the AAA rules can be incorporated into a con-

tract by reference provided the incorporation is clear and the incorporated rules are readily available. *See Williams Construction Co. v. Standard–Pacific Corp.,* 254 Cal.App.2d 442, 454, 61 Cal.Rptr. 912 (1967). Both conditions are true here. Ulbrich essentially argues that arbitration agreements should be treated differently from other contracts with respect to incorporation by reference. This is an argument the Court cannot accept given the Supreme Court's clear direction that a "state statute or judicial rule that applies only to arbitration agreements, and not to contracts generally, is preempted by the FAA." *Kilgore v. KeyBank, Nat'l Assoc.,* 673 F.3d 947, 956 (9th Cir.2012) (*citing Concepcion,* 563 U.S. ——, 131 S.Ct. at 1747.) In short, Ulbrich has not shouldered his burden to offer evidence of procedural unconscionability.

## B. Substantive Unconscionability

■ In the absence of even a minimal showing on the procedural unconscionability prong, the Court need not reach the substantive unconscionability question. Nevertheless, the Court finds that there is little evidence of substantive unconscionability. For instance, Plaintiff argues that the cost-sharing language in the agreement makes it substantively unconscionable. *See Armendariz,* 24 Cal.4th at 118–19, 125, 99 Cal.Rptr.2d 745, 6 P.3d 669 (cost-sharing provisions made agreement unconscionable); *Mercuro v. Superior Court,* 96 Cal.App.4th 167, 181, 116 Cal. Rptr.2d 671 (2002) (same). However, the evidence concerning the cost-sharing provisions in the agreement here shows that employees are not required to bear expenses that they would not have paid had they brought the action in court. While the agreement on its face indicates that the employee and employer will share costs equally (a provision that would give rise to a finding of substantive unconscionability under California law), it also indi-

cates that the arbitration would be under "the rules then in effect of the American Arbitration Association." (Ulbrich Dec. Exh. B at ¶9.) Those rules require that employees pay a reduced filing fee and that the employer bear many of the hearing fees and costs. (Overstock RJN Exh. A at 39–44.) At the hearing and in its reply brief, Overstock conceded that the current AAA rules would apply and the Court should enforce the agreement under those rules. (*See* Reply Dkt. No. 15 at 12:8–13.) To the extent there is any ambiguity, the Court Orders that the cost-sharing provision in the written agreement is Severed as unenforceable and that the AAA rules for employer-promulgated plans apply to arbitration under the agreement here.

■ Ulbrich also argues that the venue selection provision is substantively unconscionable because it would tend to discourage employees from making any claims, citing *Bolter v. Superior Court,* 87 Cal.App.4th 900, 104 Cal.Rptr.2d 888 (2001). In *Bolter,* the court found agreements unconscionable because they required small, mom-and-pop franchises located in California to close down their shops and travel to Utah to arbitrate claims. *Bolter v. Superior Court,* 87 Cal. App.4th at 909–10, 104 Cal.Rptr.2d 888. The court's finding was based upon numerous declarations from franchisees detailing the hardship the venue provision would have imposed. *Id.* Here, Ulbrich says that he "would have to incur significant costs to travel to and arbitrate any of the claims in this dispute in Utah, and these costs would be prohibitive, based on [his] current financial standing and otherwise." (Ulbrich Dec. at ¶31.) However, unlike the franchisees in *Bolter,* Ulbrich relocated to work for Overstock in Utah voluntarily, and then announced he was leaving Utah several months later when

Overstock tried to change the terms of his employment. (Complaint at ¶ 21.) Ulbrich has provided no facts to suggest that he did not expect the Utah venue selection provision would apply. *Cf. Nagrampa*, 469 F.3d at 1288–90 (franchisees had no reason to expect the arbitration would take place in an out-of-state forum where the franchise-offering circular suggested the forum selection provision would not be enforceable under California law). To the contrary, Ulbrich moved to the venue and was a relatively sophisticated contracting party. He offers little detail beyond a conclusory statement of hardship. These facts do not amount to a significant showing of substantive unconscionability. *Cf. Spradlin v. Lear Siegler Mgmt. Services Co., Inc.*, 926 F.2d 865, 869 (9th Cir.1991) (while court found troubling a forum selection clause requiring employee who returned to America after his termination in Saudi Arabia to arbitrate employment dispute in Saudi Arabia, employee had not offered more than "scant and conclusory" evidence of hardship); *see also Captain Bounce*, 2012 WL 928412 at *9–10 (no significant hardship shown with respect to North Carolina forum selection provision).

Finally, Ulbrich argues substantive unconscionability in that the arbitration agreement gives Overstock the unilateral right to seek an injunction to stop a threatened breach by an employee. First, the provision is not at issue here. Second, allowing Overstock ancillary injunctive relief, while still requiring arbitration of any claims for money damages by either party, is a relatively weak basis for finding substantive unconscionability. *Captain Bounce*, 2012 WL 928412 at *12 (despite lack of mutuality with respect to availability of injunctive relief, showing was "mitigated by the weak showing of procedural unconscionability" and lacked "[t]he crucial oppressive element" necessary to find unconscionable).

Moreover, in the absence of facts showing that the agreement to arbitrate was obtained by procedurally unfair means, any substantive inequity of the agreement alone does not establish a basis for refusing to enforce it.

## CONCLUSION

Based upon the foregoing, Ulbrich's claims are subject to arbitration under the parties' agreement and that agreement must be enforced. The Motion of Overstock to Stay Action Pending Resolution of Arbitration or Dismiss is GRANTED. This action is STAYED pending further order of the Court. The Motion In the Alternative to Dismiss the Complaint Under Rules 12(b)(6) and 9(b) for Failure to State a Claim is DENIED as moot. The case management conference currently set for September 10, 2012, is VACATED.

IT IS SO ORDERED.