**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| EARNEST L. RAAB, D.C., d/b/a SUCCESS TO SIGNIFICANCE LLC, a Washington LLC; MICHAEL ULRICK; LARRY C. WIEBER and ROSE WIEBER, d/b/a TEST FOR NUTRITION OF WASHINGTON, LLC, a Washington LLC; MAX and DEBRA ROBBINS; TONI RAGSDALE, d/b/a RAGSDALE & COMPANY LLC, an Oklahoma LLC; WAYNE MATECKI, LAC and AMY L. MATECKI, M.D., d/b/a DR. AMY'S INTEGRATIVE MEDICINE, INC., a California corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 38842-5-III |
| | ) | |
| Respondents, | ) ) | PUBLISHED OPINION |
| v. | ) ) ) | |
| NU SKIN ENTERPRISES, INC., a Delaware Corporation; PHARMANEX, LLC, a Delaware LLC; WESTON BLATTER, individually and for the marital community; SCOTT BENNETT, individually and for the marital community; TYLER BENNETT, individually and for the marital community, d/b/a LEADERSHIP INC., a Utah Corporation, and d/b/a FOR OUR FUTURE, INC., a Utah Corporation; BUILD BELIEF, LLC, a Nebraska LLC; VLADIMIR KOLBAS, individually and for the marital community, d/b/a BUILD BELIEF, LLC; ESTEE and BLAKE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

| | |
|---|---|
| CARTER, wife and husband, individually and for the marital community, d/b/a ORANGE GOOSE LLC, a Utah LLC, and d/b/a ORANGE GOOSE CENTRAL, LLC, a Utah LLC, and d/b/a ORANGE GOOSE PARTNERS, LLC, a Utah LLC; WILLIAM JONATHAN WHITTAKER and KATHIE ANNE WHITTAKER, individually and for the marital community, d/b/a PHARMANEXMD, LLC, a Florida LLC; LATISHA DANIELLE TAYLOR, individually and for the marital community, d/b/a HEALTH MEASURED VENTURES, LLC, a California LLC; and STEPHEN MOORE, D.C., individually and for the marital community, d/b/a LIVE BETTER LONGER MD, LLC, a Florida LLC, and d/b/a MD SOLUTION, and d/b/a GET HEALTHY USA, and JANE and JOHN DOES, 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Petitioners. | ) |

SIDDOWAY, J.P.T.[*] — Modern cases favor enforcing party agreements to the jurisdiction in which any future dispute will be resolved, and to a chosen state's law that will apply. Nevertheless, common law conflict of law principles will sometimes support a Washington court's refusal to enforce a forum selection agreement, and in deciding

---

[*] Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

2

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

whether to enforce such an agreement, the Washington court will not necessarily be required to honor an adhesive agreement to apply another state's laws.

Discretionary review was granted in this case when the superior court refused to dismiss a lawsuit brought in Washington against Nu Skin Enterprises, Inc., and Pharmanex, LLC (collectively "Nu Skin"), Utah-based companies, despite the plaintiffs' having earlier agreed to resolve any future "Disputes" by arbitration in Utah, applying Utah law. The appeal requires us to address the preemptive effect of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16; the scope of the parties' arbitration agreement; and the common law conflict of law principles that may support refusals to enforce a forum selection clause and choice of law provision.

We reverse the superior court's determination that the scope of the parties' arbitration agreement is too narrow to apply to the plaintiffs' claims. We reject Nu Skin's contention that "improper venue" under CR 12(b)(3) was a basis for dismissal. We reject its FAA-based arguments that arbitrability of the parties' disputes was not an issue before the superior court. We remand for the superior court to address anew whether to enforce the forum selection clause and, in that connection, hold that the plaintiffs' contention that the arbitration terms provided by their contract with Nu Skin are unconscionable is potentially relevant to whether the clause should be enforced.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

FACTS AND PROCEDURAL BACKGROUND

Headquartered in Provo, Utah, Nu Skin Enterprises, Inc. and its affiliates market beauty and nutritional products in the United States and throughout the world through a direct multilevel marketing approach. Nu Skin hires independent contractors who serve as Nu Skin distributors, deriving income by enlisting other distributors and selling Nu Skin merchandise.

The nine plaintiffs who brought the action below ("Plaintiffs") are lower-level distributors for Nu Skin. According to the Plaintiffs, the only agreement they ever signed with Nu Skin was a three-page "Distributor Agreement." Nu Skin agrees and has produced as signed evidence of the parties' agreements only copies of the Distributor Agreements signed by individual Plaintiffs between 2011 and 2018.

A representative 2017 version of the Distributor Agreement[1] defines "Contract" as meaning

> the agreement between Nu Skin and me composed of the Distributor
> Agreement (Section B),[2] the International Sponsor Agreement

---

[1] The Plaintiffs' signed Distributor Agreements are in text so small they are virtually illegible, with the result that Nu Skin produced unsigned copies of the three Distributor Agreement forms it has used since 2010 (the form was modified in 2012 and again in 2017, although not in any material respect). It acknowledged that the Plaintiffs' signed copies "are, in some instances, difficult to read and/or missing pages." Clerk's Paper's (CP) at 87. We rely throughout our opinion on the unsigned copy of the 2017 Distributor Agreement, which the Plaintiffs do not contend is substantively different from earlier versions. *See* CP at 135-37.

[2] Our references to the "Distributor Agreement" hereafter are to the entire

4

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

> (Section C), the Mandatory and Binding Arbitration Agreement (Section
> D), Miscellaneous Provisions (Section[E]), the Policies and Procedures, the
> Sales Compensation Plan, and materials pertaining to optional programs.

Clerk's Papers (CP) at 136. "Policies and Procedures" is defined to mean

> [T]he policies, in addition to the Distributor Agreement, that govern how I,
> as a Distributor, am to conduct my business and defines the rights and
> relationships of the parties.

*Id.* An acknowledgment above the agreement's signature line for the distributor states:

> I have previously reviewed the Contract, or agree, before conducting any
> Distributorship activity, to do so online at www.policiesandprocedures.us.
> If I refuse to follow any provision of the Contract, I agree to notify
> NSEUS[3] in writing, and cancel my Distributorship.

CP at 137.

As explained by a declaration of Nu Skin's compliance officer, its 2010 and later

policies and procedures (hereafter "Policies") reserved Nu Skin's right to modify the

Contract, providing that it could do so on 30 days' notice, stating:

> "[Distributors] agree that 30 days after such notice, any modification
> becomes effective and is automatically incorporated into the Contract
> between [Distributor] and the Company as an effective and binding
> provision. By continuing to act as a Distributor, engaging in any Business
> Activity, or accepting any Bonus after the modifications have become
> effective, [Distributor] acknowledge[s] acceptance of the new Contract
> terms."

---

document entitled "Distributor Agreement," not to the section B Distributor Agreement-
within-the-Distributor Agreement.

[3] Nu Skin Enterprises, U.S.A., Inc.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

CP at 89 (alterations in original) (quoting chapter 8 of the 2010 Policies). Nu Skin contends that based on this provision, its most recently modified 2018 Policies are binding on all of the Plaintiffs. Our references to the Policies hereafter are to the 2018 Policies.

*The Spokane County action and motion to dismiss*

The action below was brought in November 2021. In a complaint filed in Spokane County, the Plaintiffs alleged that Nu Skin and 10 of its higher-level distributors misrepresented the financial potential of distributorships and the legitimacy of the Nu Skin business enterprises. They also alleged that the defendants conducted business in ways that advantaged higher-level distributors to the disadvantage of lower-level distributors.

Four Plaintiffs are Washington residents and two are residents of Spokane County. The remaining Plaintiffs are a married couple from Utah, a married couple from California, and a resident of Oklahoma. In support of personal jurisdiction and proper venue, the Plaintiffs allege in the complaint that each of the defendants engaged in conduct in violation of chapters 19.86 and 19.275 RCW, and that "the events that gave rise to claims occurred in substantial part in Spokane County and Defendants transact business in Spokane County." CP at 31-32.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

In a section of the complaint preceding its "Causes of Action" section—a section V, titled "Non-Arbitrability"—the Plaintiffs assert that their Contract with Nu Skin contains mandatory arbitration terms that were unilaterally imposed in what was a "classic contract of adhesion." CP at 53-55 (boldface omitted). They allege that arbitration in Utah as provided by the Contract was not agreed to by them, that it was unsupported by consideration, and that the arbitration terms are unenforceable. Their prayer for relief seeks a court order that Nu Skin's "Mandatory and Binding Arbitration Agreement" is unlawful or otherwise not binding on them and that the claims pleaded by their complaint are not required to be arbitrated. CP at 62.

The complaint asserts claims for relief for violations of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW; for violations of Washington's Antipyramid Promotional Scheme Act, chapter 19.275 RCW; for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; for tortious interference with business expectancy; and for negligence and negligent misrepresentation. It seeks injunctive relief, actual damages for lost income, treble damages under the CPA, expectation damages for promised income, and attorney fees and costs.

Nu Skin's first response to the Plaintiffs' complaint was to petition the United States District Court for the District of Utah to compel arbitration. Several weeks later, it

7

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

filed a motion in the action below to dismiss the complaint "for improper venue pursuant to Washington Superior Court Civil Rule 12(b)(3), or, in the alternative, to dismiss or stay this action because the [FAA] requires that the United States District Court for the District of Utah decide [Nu Skin's] Petition to Compel Arbitration." CP at 199. Nu Skin alleged that "Plaintiffs agreed to resolve all disputes with the Nu Skin Defendants and Nu Skin distributor defendants through arbitration in the State of Utah." *Id.*[4]

In opposing Nu Skin's motion to dismiss, the Plaintiffs' principal argument was that the definition of "Disputes" subject to arbitration under the contract is not broad, as contended by Nu Skin, but is actually extremely *narrow*, and does not encompass their claims for relief. They argued that it is clear from the overall structure of the Distributor Agreement and its internal complaint procedures that arbitration is only intended as the final step in resolving an internal complaint.

The Plaintiffs also argued that if the forum selection provisions did apply to their claims, they would contravene a strong Washington public policy by impairing the Plaintiffs' ability to obtain relief under the CPA and Antipyramid Promotional Scheme Act, given a choice of law provision in the Distributor Agreement under which "'[the

---

[4] A "jurisdiction" clause of the Policies provides that "[t]he exclusive venue for any and all Disputes, including the validity of provisions regarding arbitration, place of venue, and jurisdiction will be in Salt Lake County, Utah," and "You consent to the jurisdiction of any court within the State of Utah." CP at 155. Similar language appears in the Mandatory and Binding Arbitration Agreement contained in the Distributor Agreement. CP at 137.

8

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

Contract] will be governed by, construed in accordance with, and interpreted pursuant to the laws of Utah, without giving effect to its rules regarding choice of laws.'" *See* CP at 234 (alteration in original) (quoting CP at 137). They also argued that a number of provisions of the contract were procedurally or substantively unconscionable. In this connection, they argued that there was a "substantial amount of overlap" between the Washington proceeding and Nu Skin's federal petition to compel arbitration, which the Washington Plaintiffs had moved to dismiss. CP at 231. The Plaintiffs provided the superior court with copies of their federal briefing opposing arbitration, "encourag[ing]" the superior court to "refer to those documents as they further lay out Plaintiffs' arguments." CP at 231, *and see* CP at 267-75. At oral argument of the motion to dismiss, Nu Skin's lawyer also offered copies of its own briefing in the federal action for the trial court's review.

The superior court denied Nu Skin's motion to dismiss the complaint or stay the action, entering but modifying an order proposed by the Plaintiffs. The reasons for denial, as revised by the superior court's striking out certain language and modifying punctuation, stated:

> The Court concludes . . . that this Court is the proper venue for this case based on Washington's strong public policy interests in deciding cases brought under its own consumer protection laws, including Washington's Antipyramid Promotional Scheme Act. ~~and/or because the Utah forum would deprive Plaintiffs of a reasonable remedy in this case. Alternatively,~~ ~~t~~ The arbitration agreement is inapplicable to the present matter because

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

> this is not a "Dispute" within the meaning of the Contract. Furthermore, this case can coexist while the Utah Federal Court decides the Petition to Compel Arbitration before it and discovery can proceed.

CP at 345.

Nu Skin moved for reconsideration, again arguing that "[w]hether Plaintiffs must arbitrate their claims was . . . not before th[e] Court," since "Nu Skin had to file its Petition to Compel Arbitration in Utah under both the parties' agreement . . . and the FAA." CP at 350. Reconsideration was denied.

Nu Skin moved this court to grant discretionary review under RAP 2.3(b)(2), on the basis that the superior court had committed probable error and the decision of the superior court substantially altered the status quo and limited the freedom of a party to act. Mot. for Discretionary Rev. at 7-8 (Apr. 21, 2022) (on file with court). Once again, it argued that Nu Skin "was required to file its petition to compel arbitration in Utah" under the parties' agreement and the FAA. *Id.* at 6. While Nu Skin's motion for discretionary review was pending, the Utah federal court ruled that oral argument was not necessary, the Washington superior court's construction of the arbitration agreement had preclusive effect, and it denied Nu Skin's motion to compel arbitration and granted the Washington Plaintiffs' motion to dismiss. *Nu Skin Enterprises, Inc. v. Raab*, No. 2:21-cv-00709-RJS-CMR, 2022 WL 2118223, at *1, *11 (D. Utah June 13, 2022) (court order).

10

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

A commissioner of our court granted the motion for discretionary review. While the commissioner observed that Nu Skin failed to demonstrate that the superior court's decision had an effect outside the courtroom, it held that the motion presented a questionable venue decision and Nu Skin's last opportunity to raise venue prior to trial. Comm'r's Ruling at 13-14 (Aug. 4, 2022) (on file with court). The Plaintiffs' motion to modify the commissioner's ruling was denied.

## ANALYSIS

Nu Skin's motion to dismiss asked the superior court to dismiss the Plaintiffs' complaint for improper venue under CR 12(b)(3) or because the FAA required the issue of arbitration to be addressed in Utah. Alternatively, it asked the superior court to stay proceedings. Following the dismissal and closing of the federal case in Utah, Nu Skin abandoned its request for a stay, informing this court that its stay request was moot. Mot. to Suppl. Rec. at 4 (June 22, 2022) (on file with court).

We first address Nu Skin's motion to dismiss, then turn to its challenge to the trial court's interpretation of the "Disputes" subject to arbitration, and then address why the alleged unconscionability of the Contract's dispute resolution provisions is potentially relevant to whether to enforce the forum selection clause and why we remand for the superior court to consider that issue anew.

11

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

I.   THE MOTION TO DISMISS FOR "IMPROPER VENUE" OR BASED ON FAA PREEMPTION
WAS PROPERLY DENIED

In reviewing a trial court's ruling on a motion, we may affirm on any basis supported by the record even if the trial court did not consider the particular argument. *King County v. Seawest Inv. Assocs., LLC*, 141 Wn. App. 304, 310, 170 P.3d 53 (2007) (citing *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

A.   *Since venue was proper under RCW 4.12.025, CR 12(b)(3) was not a basis for dismissal*

CR 12(b) identifies defenses to a claim for relief that may, at the option of the pleader, be made by motion.  CR 12(b)(3) provides that the defense of "improper venue" may be made by motion.  The Plaintiffs alleged that venue was proper in Spokane County "in that the events that gave rise to claims occurred in substantial part in Spokane County and Defendants transact business in Spokane County."  CP at 32.  This is a sufficient basis for venue under RCW 4.12.025.

In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 55, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013), a case cited by Nu Skin in the trial court, the United States Supreme Court construed Rule 12(b)(3) of the Federal Rules of Civil Procedure (FRCP) as inapplicable to cases in which a defending party seeks to enforce a forum selection clause.  It explained that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the

12

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

case was brought satisfies the requirement of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* Elsewhere, it stated that "[i]f the federal venue statutes establish that suit may be brought in a particular district, a contractual bar cannot render venue in that district 'wrong.'" *Id.* at 58.

The federal district court in Texas in which the *Atlantic Marine* complaint was filed would have been a proper venue for a dispute over a construction subcontract that was being performed in Texas. The defendant's complaint was that the parties' agreement contained a forum selection clause that stated disputes would be litigated in the state or federal courts of Virginia. *Id.* at 52-53. The court held that FRCP 12(b)(3) did not apply. It observed that a defendant could move to transfer a federal case to the contractually-required federal forum by making a transfer motion under § 1404(a), and where the defendant wished to enforce a forum-selection clause pointing to a state or foreign forum, it could do so through the doctrine of *forum non conveniens. Id.* at 59-60.

Following *Atlantic Marine*, two state supreme courts have construed their state rule or statutory equivalents to FRCP 12(b)(3) similarly, holding that they do not provide a basis to dismiss actions for which venue is proper under state law, but that are allegedly contractually required to be commenced elsewhere. In *Tucker v. Cochran Firm-Criminal Defense Birmingham LLC*, 2014 OK 112, ¶ 17, 341 P.3d 673, 680 (Okla. 2014), the Oklahoma Supreme Court held that just as its statute 12 O.S. § 2012(B)(3) "does not

13

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

apply to a motion raising the judicial doctrine of *forum non conveniens*, neither does

§ 2012(B)(3) apply to a motion alleging a *contractual agreement* for a different venue."

In *Margolis v. Daily Direct LLC*, 2023 VT 20, ¶ 6, 297 A.3d 114 (Vt. 2023), in which the

defending party had successfully enforced a forum selection clause under Vermont's

Rule 12(b)(3), the Vermont Supreme Court engaged in no more analysis than citing

*Atlantic Marine* to hold that some rule *other than* Rule 12(b)(3) would have to be the

basis for seeking to dismiss an action based on the existence of a forum selection clause.[5]

The same result is required here. CR 12(b)(3) is substantively identical to FRCP

12(b)(3). Under RCW 4.12.025, venue of Plaintiffs' action in Spokane County was

proper based on the allegations of the complaint. While this may not have been the

reason relied on by the trial court for denying Nu Skin's motion,[6] the trial court record

supported denying the CR 12(b)(3) motion on this basis.

B.    *Dismissal was not required by the FAA*

Nu Skin argued for dismissal of the complaint on the alternative basis that "the

[FAA] requires that the United States District Court for the District of Utah decide"

---

[5] In *Atlantic Marine*, the Supreme Court noted that an amicus had advocated for FRCP 12(b)(6) as a possible basis for dismissal, but the parties had not briefed the application of that rule and the court declined to consider it. 571 U.S. at 61. The amicus, Professor Stephen Sachs, later elaborated on his view that a forum selection clause should be viewed as an affirmative defense that can then be presented for decision by a 12(b)(6) motion to dismiss or a motion for summary judgment. Stephen E. Sachs, *The Forum Selection Defense*, 10 DUKE J. CONST. L. & PUB. POL'Y no. 1, at 1 (2014).

[6] It was possibly the reason. Nu Skin had cited *Atlantic Marine* in its briefing.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

whether arbitration should be compelled. CP at 199. It argued in this connection that the parties' Contract provided that the Utah arbitrator would determine arbitrability, and that cases applying 9 U.S.C. § 4 of the FAA require a motion to compel arbitration to be heard in the federal district where arbitration was contractually agreed to take place.

1.    The issue of arbitrability was not delegated to the Utah arbitrator

Nu Skin argued first that its Policies provide that the "'exclusive venue for any and all Disputes, *including the validity of provisions regarding arbitration, place of venue, and jurisdiction*, will be in Salt Lake County, Utah,'" and that the highlighted language constituted a delegation of the issue of arbitrability to the Utah arbitrator. CP at 207 (boldface omitted). Citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015), and *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S.___, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019), it argued that under the FAA, a delegation of the issue of arbitrability to the arbitrator must be honored by the courts.

The arbitration forum selection provisions of the parties' Contract fall within the scope of the FAA. Under 9 U.S.C. § 2 of the FAA, "[a] written provision in any . . . contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.) As observed by the Washington Supreme Court in *Satomi*

15

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

*Owners Ass'n v. Satomi, LLC*, "the United States Supreme Court has interpreted the term 'involving commerce' in section 2 as 'the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  167 Wn.2d 781, 798-99, 225 P.3d 213 (2009) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995))).  The Plaintiffs do not dispute that the arbitration forum selection provisions of the Contract are subject to the FAA.

The FAA contains no provision of express preemption nor does it preempt the field of arbitration.  *Satomi Owners Ass'n*, 167 Wn.2d at 800 n.14 (citing *Volt Info. Scis., Inc. v. Bd. of Tr.*, 489 U.S. 468, 477, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).  It preempts state law, if at all, by conflict preemption, which occurs "where (1) it is impossible to comply with both state and federal law or (2) state law '"stands as an obstacle to the accomplishment of the full purposes and objectives of Congress."'"  *Id.* at 800 (quoting *McKee v. AT&T Corp.*, 164 Wn.2d 372, 387, 191 P.3d 845 (2008) (quoting, in turn, *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S. Ct. 615, 78 L. Ed. 2d 443 (1984))), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011).

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

As the United States Supreme Court explained in *First Options of Chicago, Inc. v. Kaplan*, a dispute potentially subject to arbitration presents three types of disagreement— in this case, the first is whether the defendants did mislead the Plaintiffs, which makes up the *merits* of the dispute; second, whether the Plaintiffs agreed to arbitrate the merits, which addresses the *arbitrability* of the dispute; and third, who should have the primary power to decide the second matter—the arbitrator or the court—which involves *who decides arbitrability*. 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). *Kaplan* held that courts generally decide the third point of disagreement applying ordinary state-law principles, because it is a matter the parties "reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 945. It emphasized that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 935 (alterations in original) (citing *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

*Brennan* is the first case on which Nu Skin relied to argue that deciding arbitrability was delegated by these parties to the Utah arbitrator. In that case, the parties to an employment dispute had entered into an agreement whose arbitration clause "expressly incorporated the Rules of the American Arbitration Association (AAA)." 796 F.3d at 1128. "[O]ne of [the rules] states that the 'arbitrator shall have the power to

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

*rule on his or her own jurisdiction*, *including* any objections with respect to the . . .

*validity of the arbitration agreement*.'" *Id.* (emphasis added). The Ninth Circuit pointed

out that generally in deciding whether to compel arbitration, the court determines the

"gateway issues" of "(1) whether there is an agreement to arbitrate between the parties;

and (2) whether the agreement covers the dispute." *Id.* at 1130 (citing *Howsam v. Dean

Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)). It

found that incorporation of the AAA rule empowering the arbitrator to "'rule on his or

her own jurisdiction'" and the "'validity of the arbitration agreement'" was a clear and

unmistakable delegation of those issues to the arbitrator. *Id.* at 1130-31.

In *Schein*, the second case relied on by Nu Skin, the parties also agreed that "[a]ny

dispute arising . . . shall be resolved by binding arbitration in accordance with the

arbitration rules of the American Arbitration Association." 139 S. Ct. at 528. The issue

presented in *Schein* was whether there should be a "wholly groundless" exception to

referring disputes to arbitration, and a unanimous Supreme Court refused to recognize

such an exception. The Court stated, "We express no view about whether the contract at

issue in this case in fact delegated the arbitrability question to an arbitrator. The Court of

Appeals did not decide that issue." *Id.* at 531. Emphasizing that "[u]nder our cases,

courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

clear and unmistakable evidence that they did so," the Supreme Court directed the Court

of Appeals to decide that issue on remand. *Id.*

Here, Nu Skin relies on language in chapter 8 of its Policies, titled, "General

Terms." The section of the General Terms on which it relies, in which we highlight the

language that Nu Skin contends constitutes the delegation, states:

> 1.5    GOVERNING LAW/JURISDICTION
>
> Utah will be the exclusive venue for arbitration or any other resolution of
> any Disputes. The place of origin of the Contract is the State of Utah,
> USA, and the Contract will be governed by, construed in accordance with,
> and interpreted pursuant to the laws of the State of Utah, USA, without
> giving effect to its rules regarding choice of law. The exclusive venue for
> any and all Disputes, *including the validity of provisions regarding
> arbitration, place of venue, and jurisdiction*, will be Salt Lake County,
> Utah. You consent to the personal jurisdiction of any court within the
> State of Utah and waive any objection to improper venue.

CP at 155 (emphasis added). The sentence on which Nu Skin relies identifies "Salt Lake

County" as "the exclusive venue" for resolving the highlighted issues. *Id.* It does not

speak of the authority delegated to the Utah arbitrator at all. The superior court's

authority to decide issues of arbitrability was not limited by any delegation to the Utah

arbitrator.

The Utah federal court rejected Nu Skin's argument that other language in the

Contract delegated decisions on arbitrability to the arbitrator. *Nu Skin Enter., Inc. v.

Raab*, 2022 WL 2118223, at *8 n.93 ("Here, the requirement that 'any and all . . .

disputes . . . arising under or related to th[e] Contract' be submitted to arbitration does not

19

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

constitute clear and unmistakable evidence that the parties agreed to delegate the question

of arbitrability to the arbitrator.").

> 2.  The FAA did not require the issue of arbitration to be addressed by the Utah federal court

A second basis on which Nu Skin argued the FAA required dismissal of the

complaint was that it "requires . . . the United States District Court for the District of

Utah [to] decide the . . . Petition to Compel Arbitration." CP at 199. The case law

offered in support, however, dealt only with motions to compel arbitration in *federal*

*court*, and issues presented when a motion is brought in a federal district different from

that in which the parties agreed to arbitrate. Nu Skin could have moved to compel

arbitration in the superior court under RCW 7.04A.070, however. "'[A] strong public

policy favoring arbitration is recognized under both federal and Washington law.'"

*Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 48, 470 P.3d 486 (2020) (quoting *Satomi*

*Owners Ass'n*, 167 Wn.2d at 810).

Title 9 U.S.C. § 4 provides that a party "aggrieved by the alleged failure, neglect,

or refusal of another to arbitrate . . . may petition any United States district court which,

save for such agreement, would have jurisdiction under title 28 . . . for an order directing

that such arbitration proceed in the manner provided for in such agreement." As pointed

out in the seminal decision in *Moses H. Cone Memorial Hospital v. Mercury*

*Construction Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), the

20

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

FAA is "something of an anomaly in the field of federal-court jurisdiction" in that it creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." Title 9 U.S.C. § 4 of the FAA provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue. In this case, as explained by the Utah federal court, it was the Plaintiffs' RICO claim that provided federal question jurisdiction over that claim and, in turn, supplemental jurisdiction over the state claims. *Nu-Skin Enter., Inc. v. Raab*, 2022 WL 2118223, at *4.

Accordingly, "enforcement of the [FAA] is left in large part to the state courts." *Moses H. Cone*, 460 U.S. at 25 n.32. In *Southland Corp. v. Keating*, another landmark case, the United States Supreme Court held that an arbitration clause enforceable in an action in a federal court is equally enforceable if the action is brought in a state court. 465 U.S. 1, 17, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (Stevens, J., concurring in part). As the majority in *Southland* pointed out, it was unimaginable that Congress intended to limit the FAA's application to disputes subject only to federal court jurisdiction at a time when only "2[ percent] of all civil litigation in this country is in the federal courts." *Id.* at 15 & n.8. "[S]tate courts have a prominent role to play as enforcers of agreements to

21

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

arbitrate." *Vaden v. Discover Bank*, 556 U.S. 49, 59, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009).

Nevertheless, Nu Skin repeatedly told the superior court that it was "required" to have its motion to compel arbitration heard in Utah. It cited to four decisions by federal appellate courts, with no explanation how they supported this so-called requirement. Examination reveals that the cases merely reflect adverse consequences that have befallen parties where there was an election to take action in federal rather than state court, in a district other than the contractually-agreed location for arbitration.

The problem is created by language in 9 U.S.C. § 4, which—after allowing a motion to compel arbitration to be filed in any district having jurisdiction over the underlying dispute—goes on to provide that the arbitration hearing and proceedings under the agreement, "shall be within the district in which the petition for an order directing such arbitration is filed."

In *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781 (9th Cir. 2001), the first case relied on by Nu Skin, the Ninth Circuit held that a federal district court in California properly enjoined an arbitration that A..BMH had commenced in the allegedly-agreed arbitration venue of Georgia, given that the California court had jurisdiction and was a proper venue. It pointed out that if A..BMH was concerned about economy and confining the parties' litigation to a single forum, it could counterclaim to compel

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

arbitration in California. It observed that 9 U.S.C. § 4 of the FAA "only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur." *Id.* at 785.

In *Kawasaki Heavy Indusustries, Inc v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 997 (7th Cir. 2011), the Seventh Circuit, in explaining its conclusion that the defendant had not waived its defense to arbitration, rejected Kawasaki's argument that the defendant should have moved to compel arbitration when Kawasaki sued it in a federal court in Texarkana, Texas. It pointed out that the Texarkana federal court (which is located in the Eastern District of Texas) could not have compelled arbitration in the agreed venue of Dallas (which is located in the Northern District).

In *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1055 (10th Cir. 2006), the Tenth Circuit Court held that Image Software should not have been able to get an order from the federal district court in Colorado compelling arbitration in the agreed forum in Ohio, but did, without objection. It held that since section 4 addresses venue, not jurisdiction, any objection to arbitrating in Ohio had been waived.

Finally, in *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1009 (6th Cir. 2003), the Sixth Circuit held that the district court should have entered an order to stay litigation of a dispute that was subject to an enforceable arbitration agreement, but

23

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

did not err by denying the motion to compel arbitration. It could only compel arbitration within its own district, and the parties' agreement called for arbitration in France.

None of these cases supported Nu Skin's argument that the FAA required that arbitrability be addressed only in the action it had commenced in Utah. It could have moved to compel arbitration under RCW 7.04A.070. If Washington has jurisdiction over the dispute and the parties, it may enforce an agreement to arbitrate. RCW 7.04A.260; *and see* Timothy J. Heinsz, *The Revised Uniform Arbitration Act: Modernizing, Revising, and Clarifying Arbitration Law*, 2001 J. DISP. RESOL. 1, 51 (this provision of the revised uniform arbitration act was "intend[ed] to prevent a party, particularly one with superior bargaining power, from requiring the other party to determine the enforceability of an arbitration agreement only in a distant forum").

II. THE CONTRACTUAL DEFINITION OF "DISPUTE" CANNOT REASONABLY BE CONSTRUED TO HAVE THE NARROW MEANING CONTENDED FOR BY THE PLAINTIFFS

The Mandatory and Binding Arbitration Agreement section of the Distributor Agreement included the distributor's agreement in its subsection 2 "that any Dispute will be resolved and settled in accordance with and pursuant to the terms and conditions of this Contract, and by the rules and procedures set forth in Chapter 7 (Arbitration) of the Policies and Procedures." CP at 137. It states, at its subsection 3:

> A 'Dispute' is defined as any and all past, present or future claims,
> disputes, causes of action or complaints, whether based in contract, tort,
> statute, law, product liability, equity, or any other cause of action (i) arising

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

> under or related to this Contract, (ii) between other Distributors and me arising out of or related to a Distributorship, or our business relationships as independent contractors of the Nu Skin [sic], (iii) between Nu Skin and me, (iv) related to Nu Skin or its past or present affiliated entities, their owners, directors, officers, employees, investors or vendors, (v) related to the Nu Skin [sic] products, (vi) regarding Nu Skin's resolution of any other matter that impacts my Distributorship, or that arises out of or is related to the Company's business, including my disagreement with Nu Skin's disciplinary actions or interpretation of the Contract.

*Id.* (alterations in original).

The trial court ruled, "The arbitration agreement is inapplicable to the present matter because this is not a 'Dispute' within the meaning of the Contract." CP at 345. While Nu Skin argues that it is unclear whether this ruling was public policy-based, language-based, or based on the manner in which the Plaintiffs stated their claims, the superior court was required to rely on the Contract's language. Washington follows the objective manifestation theory of contract interpretation, under which courts focus on the "reasonable meaning of the contract language to determine the parties' intent" at the time they entered into the agreement. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014); *see also Hearst Commc'ns Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005) ("[T]he subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used."). Generally, courts must "giv[e] lawful effect to all the provisions in a contract," rather than "render[ing] some of the language meaningless or ineffective." *Grey v. Leach*, 158

25

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

Wn. App. 837, 850, 244 P.3d 970 (2010). This requires courts to view "the contract as a whole, interpreting particular language in the context of other contract provisions." *Viking Bank*, 183 Wn. App. at 713.

A contract is ambiguous only when it is "fairly susceptible to two different but reasonable interpretations." *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 200 Wn.2d 315, 321, 516 P.3d 796 (2022). Contract interpretation is generally a question of law reviewable de novo, although it may present a mixed question of law and fact if the court needs to turn to extrinsic evidence to resolve an ambiguity. *Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13, 33-34, 111 P.3d 1192 (2005).

In moving to dismiss the complaint, Nu Skin paraphrased the Distributorship Agreement's definition of "Disputes," inserting an "or" that treated the definition's list of clauses (i) through (vi) as disjunctive and the definition as therefore very broad. *See* CP at 206. The Plaintiffs responded by pointing out that there is no connective between the fifth and sixth clauses of the definition—a rhetorical device known as an "asyndeton"— which the Plaintiffs argued is used as a substitution for the word "and," not for the word "or" as Nu Skin suggests, citing *State v. O'Laughlin*, 239 Ariz. 398, 372 P.3d 342 (Ariz. Ct. App. 2016). *O'Laughlin* is equivocal about construing the omission of a connective, however, recognizing that it may be an intentional rhetorical device but might also be an unintentional omission. It explains:

26

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

> The asyndeton can speed up a sentence, suggest unity of the listed items, or indicate disorder. *See Encyclopedia of Rhetoric and Composition* 41 (Theresa Enos ed., 1996) (examples include Caesar's declaration, "I came, I saw, I conquered," and, from Abraham Lincoln's Gettysburg Address, "The government of the people, by the people, for the people shall not perish from this earth"); *see also* Linda L. Berger, *Studying and Teaching "Law as Rhetoric": A Place to Stand*, 16 LEGAL WRITING: J. LEGAL WRITING INST. 3, 51 n.179 (2010). In legal texts, the general rule interpreting asyndetic sentences is to imply "and" as the final coordinating conjunction. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012). But as Garner and Justice Scalia note, "[S]uch a construction could be read as a disjunctive formulation, [therefore] most drafters avoid it." *Id.* at 119. Indeed, the general rhetorical rule does not appear to apply in the interpretation of non-persuasive legal texts such as contracts or statutes.

372 P.3d at 347 (alterations in original); *see also* Craig D. Tindall, *Rhetorical Style*, 50 FED. LAW. 24, 27 (2003) (describing asyndeton as used to "convey movement speed, concision," to suggest "equal synonymity among the words," "to lend a sense of spontaneity," or "to suggest that the list provided is incomplete").

The Washington Supreme Court was presented with the same grammatical dispute in *State v. Tyler*, 191 Wn.2d 205, 422 P.3d 436 (2018), a criminal appeal in which a connective was left out of the penultimate element of a to-convict instruction. In discussing the Scalia & Garner text relied on in *O'Laughlin*, the court observed

> Tyler invokes a default rule of grammar whereby a serial list will be read in the conjunctive in the absence of a coordinating disjunctive. While this default rule is sometimes apt (e.g., "I came, I saw, I conquered"), it has limited reach. Indeed, the authors Tyler cites note that a sentence omitting a conjunction may also be read as disjunctive, depending on context.

27

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

*Id.* at 218 (citations omitted). In *Tyler*, the court held that an instruction defining the crime that immediately preceded the to-convict instruction provided a context in which the intended meaning—a disjunctive one—would have been clear. *Id.* at 217.

More important than the default rule applied to asyndetons are the parties' other arguments for their construction of the meaning of "Disputes." The Plaintiffs argue that read together, the arbitration provisions in chapter 7 of the Policies are nothing more than the final step in an internal grievance review process outlined in enforcement provisions in chapter 6. The internal review of reported "violations" begins with a submission to Nu Skin's compliance review committee (CRC), whose decision can be appealed to Nu Skin's compliance appeal committee (CAC), whose decision a dissatisfied participant can then request be referred to chapter 7 arbitration. *See* CP at 150-51 (sections 3.1, 3.4, 3.5) and 152 (section 5). The Plaintiffs argue that this is supported by section 5 of chapter 7 of the Policies dealing with "REQUEST FOR ARBITRATION," which states:

> *For easy reference*, all parties that participated in the CAC proceeding, and that will participate in the arbitration, including the Company, may be referred to as "Participants" in this Chapter 7. Within 60 days from the date of the CAC'[s] decision, any Participant, who is not satisfied with the CRC'[s] decision, will notify, in writing, all the other Participants in the CAC proceeding that the Participant requests that the Dispute be referred to arbitration before a neutral third party arbitrator.

CP at 152 (emphasis added). Provisions of chapter 7 limit important rights in arbitration to "Participants," e.g., sections 6.1-6.4, 6.6.

28

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

The Plaintiffs argue that by requiring "Disputes" to satisfy every element of the definition, including the critical sixth element ("regarding Nu Skin's resolution of any other matter that impacts my Distributorship, or that arises out of or is related to the Company's business . . . ,") the Contract effectively limits arbitration to serving as the final avenue for review of the internal grievance process.  CP at 137.

One problem with this argument is that there would have been far simpler ways to define "Disputes" to mean only grievances that had been submitted for internal review.  Another is that the capitalized term "Participant" is differently defined elsewhere in the Policies.  It appears in the glossary of defined terms that is an addendum to the Policies as meaning "[a]ny person who has a Beneficial Interest in a Business Entity or Brand Affiliate Account."  CP at 280.  While not a model of clarity, section 5 of chapter 7 can be read as providing a second meaning of Participants "[f]or ease of reference," as it says, to enlarge procedural rights in arbitration to all parties to an appealed internal grievance, not just persons with a beneficial interest in a business entity or brand affiliate account.

Most compelling is Nu Skin's argument that the Plaintiffs' narrow meaning for "Disputes" makes no sense given the definition's content and structure.  As Nu Skin points out:

> The first five subparts lay out distinct matters that are subject to arbitration.
> The sixth subpart then applies to "any other matter" relating to the Brand
> Affiliate (distributor) or the Company.  The word "other" would be
> pointless if the six subparts were read conjunctively rather than

29

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

> disjunctively.  How could a claim arise out of or relate to the Contract (subpart one), *and* be between multiple Brand Affiliates (subpart two), *and* be between a Brand Affiliate and the Company (subpart three) *and* relate to the Company (subpart four), *and* relate to its products (subpart five), *and* be about "any other matter" (subpart six)?  Subpart six is clearly a catchall provision for any matter that does not fall within the five independent subparts preceding it.

Opening Br. of Appellants at 32 (citation omitted).  We agree.  And the Plaintiffs' argument that we should regard the definition as an asyndeton and presume it is conjunctive fails where the definition is too long and complex to be viewed as an intended "rhetorical device."

The interpretation offered by Nu Skin is the only reasonable one.  "Disputes" is broadly defined, and the Plaintiffs' complaint falls within the definition.

 III.    THE ISSUE OF WHETHER THE FORUM SELECTION CLAUSE IS UNREASONABLE SHOULD BE ADDRESSED ANEW BY THE SUPERIOR COURT

In addition to holding that the arbitration agreement did not apply to the Plaintiffs' claims, the superior court concluded that Washington was "the proper venue . . . based on Washington's strong public policy interests in deciding cases brought under its own consumer protection laws."  CP at 345.  Rather than ask us to affirm on this alternative basis alone, however, the Plaintiffs argue on appeal that the alleged unconscionability of the Contract's dispute resolution provisions is a more compelling reason for denying enforcement.  They argue that because the contractually selected forum in this case is arbitration in Utah, the appeal is "not really about venue at all."  Br. of Resp'ts at 1.

30

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

They characterize Nu Skin's motion to dismiss as "actually a thinly-veiled attempt to compel arbitration." *Id.* at 5. They argue that unconscionable provisions so permeate the Contract that they are not severable, and arbitration should be denied altogether.

Nu Skin responds that given the Contract's forum selection clause, any issues of unconscionability and severability must be resolved in Utah. If the forum selection clause were enforced, Utah's arbitration act provides that the parties' dispute over the enforceability of the agreement to arbitrate will be resolved by a Utah court. *See* Utah Code Ann. § 78B-11-108.

For reasons that follow, we choose to remand the issue of whether to enforce the forum selection clause to be addressed anew by the superior court.

A.      *Washington common law recognizes that forum selection clauses need not be enforced where enforcement would be unreasonable*

Historically, agreements that purported to fix the judicial forum in which any future controversy could be decided were found to be against public policy and were not enforced. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) ("Forum-selection clauses have historically not been favored by American courts."); Francis M. Dougherty, *Validity of Contractual Provisions Limiting Place or Court in Which Action May be Brought*, 31 A.L.R.4th 404, § 3 (1984) (collecting cases); RESTATEMENT OF CONTRACTS § 558 (AM. L. INST. 1932) (declaring "illegal" bargains limiting unreasonably the tribunal in which a future right of action could be enforced).

31

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

The trend began to shift with the Supreme Court's 1972 decision in *The Bremen*, which enforced a forum selection clause in an international agreement negotiated by sophisticated parties. The trend was extended and strengthened by the Supreme Court's 1991 decision in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 111 S. Ct. 1522, 113 L. Ed. 2d 622, which held enforceable a forum selection provision included in ticketing for a cruise that the Supreme Court acknowledged was a "form contract the terms of which are not subject to negotiation." Both cases were brought in admiralty and signaled developing *federal* common law. *The Bremen*, 407 U.S. at 10; *Shute*, 499 U.S. at 590.

Whether forum selection clauses are valid and enforceable in actions brought in a state court is a matter of state law. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 36, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (Scalia, J., dissenting) ("[I]ssues of contract, including a contract's validity, are nearly always governed by state law. It is simply contrary to the practice of our system that such an issue should be wrenched from state control in absence of a clear conflict with federal law or explicit statutory provision."). If the forum selected is *arbitration*, the FAA will preempt any state law that disfavors arbitration agreements. But there is no federal statute that requires states to enforce other forum selection clauses.

32

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

A number of states have chosen to follow *The Bremen* and *Carnival Cruise*
developments. The virtues of forum selection clauses include permitting parties to select
a desirable, perhaps neutral, forum; they obviate a potentially costly struggle at the outset
of litigation over jurisdiction and venue; and they reduce the possibility of parallel
lawsuits between parties in different fora. Michael E. Solimine, *Forum-Selection Clauses
and the Privatization of Procedure*, 25 CORNELL INT'L L.J. 51, 51-52 (1992). In *Dix v.
ICT Group, Inc.*, 160 Wn.2d 826, 835, 161 P.3d 1016 (2007), our Supreme Court stated
that a synthesis of *The Bremen* and *Carnival Cruise* analyses by the Maryland Court of
Appeals was "generally in agreement with statements in this state's appellate decisions."
Quoting *Gilman v. Wheat, First Securities, Inc.*, the court stated in *Dix:*

> "(1) [A] forum selection clause is presumptively valid and enforceable and
> the party resisting it has the burden of demonstrating that it is unreasonable,
> (2) a court may deny enforcement of such a clause upon a clear showing
> that, in the particular circumstance, enforcement would be unreasonable,
> and (3) the clause may be found to be unreasonable if (i) it was induced by
> fraud or overreaching, (ii) the contractually selected forum is so unfair and
> inconvenient as, for all practical purposes, to deprive the plaintiff of a
> remedy or of its day in court, or (iii) enforcement would contravene a
> strong public policy of the State where the action is filed."

*Id.* at 834 (alteration in original) (quoting 345 Md. 361, 378, 692 A.2d 454 (1997)).
Other circumstances in which Washington appellate courts have found a forum selection
clause to be unreasonable and denied enforcement are when a party demonstrates "undue
influence" or "unfair" or "overweening" bargaining power. *Id.* at 835 (quoting *Bank of*

33

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

*Am., N.A. v. Miller*, 108 Wn. App. 745, 748, 33 P.3d 91 (2001), and *Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 618, 937 P.2d 1158 (1997)).

> B.     *The alleged unconscionability of the Contract's dispute resolution terms was relevant to whether to enforce the forum selection clause but might not have been considered*

"An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974). Although states may not refuse to enforce arbitration agreements based on state laws that apply only to such agreements, "'generally applicable contract defenses, such as fraud, duress, or unconscionability'" may be applied. *McKee*, 164 Wn.2d at 396 (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). The party opposing arbitration on the grounds of unconscionability bears the burden of proving that the agreement is unenforceable. *Zuver v. Airtouch Commc'ns*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004).

"Unconscionability is a 'gateway dispute' that courts must resolve because a party cannot be required to fulfill a bargain that should be voided." *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 54, 308 P.3d 635 (2013) (citing *Zuver*, 153 Wn.2d at 302-03). Washington recognizes two types of unconscionability that can invalidate arbitration

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

terms: procedural and substantive. *McKee*, 164 Wn.2d at 396. "Procedural

unconscionability applies to impropriety during the formation of the contract; substantive

unconscionability applies to cases where a term in the contract is alleged to be one-sided

or overly harsh." *Burnett*, 196 Wn.2d at 54 (citing *Nelson v. McGoldrick*, 127 Wn.2d

124, 131, 896 P.2d 1258 (1995)).

The Plaintiffs contend the Contract is procedurally unconscionable because it is

both a contract of adhesion and it binds distributors to incorporated and modified

provisions even before the provisions can be seen. An adhesion contract is not

necessarily procedurally unconscionable, but the adhesive nature is relevant. *Burnett*,

196 Wn.2d at 54. The key inquiry is whether the party with unequal bargaining power

lacked a meaningful opportunity to bargain. *Id.* at 54-55.

The Plaintiffs contend the Contract is also substantively unconscionable in a

number of respects. Among other provisions, they point to a confidentiality and

precedence provision, under which previous arbitration proceedings are confidential and

cannot be disclosed "[e]xcept as may be required by law *and the Company's use of an

arbitrator's award as precedence for deciding future Disputes.*" CP at 153 (emphasis

added).

They point to a time bar within chapter 6 of the Policies that any "violation" by Nu

Skin alleged by a distributor must be submitted in writing to the CRC within two years of

35

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

its first occurrence. CP at 150. The chapter permits Nu Skin, by contrast, to "take action on its internal investigation at any time," adding that Nu Skin "is not bound by the time limi[tations] set forth in Section 3.2." CP at 150.

They point to limitation of liability provisions that rule out recovery of the types of damages they claim are most likely to be sustained by distributors but not by Nu Skin: "punitive, incidental, consequential, special or indirect damages, including loss of future revenue or income, or loss of business reputation or opportunity." CP at 153 (capitalization omitted).

Nu Skin replies that we should not consider the Plaintiffs' unconscionability arguments because they were not raised below. They were raised below, however—in the Plaintiffs' federal briefing, which they filed with the superior court and incorporated in their opposition to the motion to dismiss. The arguments of unconscionability were not a focus of the briefing or argument in the trial court for what appear to be two reasons. One is that Nu Skin argued that arbitration issues were required to be resolved in Utah and chose, otherwise, to largely ignore arbitration and unconscionability. The other is that the Plaintiffs' primary focus was on their challenge to the scope of arbitration.

Nu Skin also disputes the Plaintiffs' characterization of the allegedly unconscionable provisions and disputes that they are unconscionable. Addressing the

36

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

confidentiality and precedence provision, Nu Skin argues that such provisions have found

not to be unconscionable, depending on their terms, and in any event to be severable,

citing *Romney v. Franciscan Medical Group*, 186 Wn. App. 728, 349 P.3d 32 (2015).

Addressing the time bar, Nu Skin argues that the two-year limitation applies to distributor

reports of violations by other distributors, and is not a time frame within which a

distributor must bring a claim against Nu Skin. Addressing the limitation on damages

provision, Nu Skin cites *Town Park Hotel Corp. v. Priskos Investments., Inc.*, a federal

decision from the District of Utah, in which a similar damage limitation provision was

held not to be unconscionable. No. 1:02-CV-164 TC, 2006 WL 658896, at *11 (D. Utah

Mar. 14, 2006). The damage limitation in *Town Park* was mutual, the party claiming

unconscionability offered "nothing but speculation" that only it was likely to sustain the

types of damages foreclosed by the agreement, and the provision did not meet the Utah

standard for substantive unconscionability of being "'so one-sided as to oppress or

unfairly surprise an innocent party.'" *Id.* at *10-11 (quoting *Ryan v. Dan's Food Stores,
Inc.*, 972 P.2d 395, 402, 350 Utah Adv. Rep. 3 (1998)).

The arguments for and against unconscionability that are presented on appeal go

well beyond the development of that issue in superior court. While the Plaintiffs ask us

to resolve the issue of unconscionability in their favor, they ask us in the alternative to

37

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

remand so that the superior court can consider the relevance of unconscionability to enforcement of the forum selection clause.

    C.      *Washington law will apply to the Plaintiffs' contentions of unconscionability if enforcement of the forum selection clause is denied*

Nu Skin not only challenges Plaintiffs' claims of unconscionability, it argues that the Plaintiffs have applied the wrong state's law, because Utah law, without giving effect to its rules regarding choice of laws, must be applied as agreed in the parties' Contract.[7] Whether the choice of law provision will be applied by Washington courts is decided under Washington conflict of law principles, however.

Washington courts generally enforce choice of law provisions, but we will engage in a choice of law analysis if a real conflict exists between the laws or interests of Washington and the laws or interests of another state. *Brown v. MHN Gov't Servs.*, 178 Wn.2d 258, 263, 306 P.3d 948 (2013); *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 692, 167 P.3d 1112 (2007). A "conflict exists if the outcome of an issue is different depending on which state's law applies." *Pope Res. LP v. Certain Underwriters at Lloyd's, London*, 19 Wn. App. 2d 113, 124, 494 P.3d 1076 (2021), *review denied*, 198 Wn.2d 1040, 502 P.3d 863 (2022). If a real conflict *does* exist and the contract contains

---

[7] By way of reminder, the Distributor Agreement and Policies state that the Contract "will be governed by, construed in accordance with, and interpreted pursuant to the laws of Utah, USA, without giving effect to its rules regarding choice of laws." CP at 137.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

an express choice of law provision, Washington courts decide whether to follow the law

of the chosen state by applying sections 6 and 187 of the *Restatement (Second) of*

*Conflict of Laws* (AM. L. INST. 1971) (hereinafter *Restatement*). *Erwin*, 161 Wn.2d

at 694.

> 1.       A conflict exists between relevant Washington and Utah law

Washington and Utah principles of contract interpretation share much in common,

including that unconscionability may form a basis for not enforcing an otherwise

applicable contract. They conflict substantially in their view of when an agreement is so

one-sided as to be substantively unconscionable, however. *See generally Ulbrich v.*

*Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 930 (N.D. Cal. 2012) (explaining that "Utah's

interpretation of what is or is not substantively unconscionable departs significantly from

California law"); *United States ex rel. West v. Ctr. for Diagnostic Imaging, Inc.*, No.

C05-0058RSL, 2010 WL 11682232, at *1 (W.D. Wash. 2010) (unreported) (noting that

"[s]tate laws regarding unconscionability vary significantly").

Although in Utah substantive unconscionability may independently support a

finding of unconscionability, Utah courts nevertheless "'use a two-pronged analysis'"

that focuses both on substantive *and* procedural unconscionability. *Com. Real Est. Inv.,*

*LC v. Comcast of Utah II, Inc.*, 285 P.3d 1193, 1203, 714 Utah Adv. Rep. 31 (2012)

(quoting *Dan's Food Stores*, 972 P.2d at 402). By contrast, in Washington, courts

39

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

undertaking an unconscionability analysis are not required to consider procedural

unconscionability in challenges to the substantive conscionability of an agreement (and

vice versa). *See, e.g.*, *McKee*, 164 Wn.2d at 396 (holding "[a]greements may be *either*

substantively or procedurally unconscionable" and declining to review the alleged

procedural unconscionability of the agreement); *Adler v. Fred Lind Manor*, 153 Wn.2d

331, 345, 103 P.3d 773 (2004) ("[O]ur decisions . . . analyze procedural and substantive

unconscionability separately without suggesting that courts must find both to render a

contract void."); s*ee also Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174

(W.D. Wash. 2002) (finding Washington law controlled the determination of the

conscionability of an arbitration agreement because Washington law allowed a contract

to be invalidated for either procedural or substantive unconscionability, whereas in

California, both procedural and substantive unconscionability were required).

Additionally, Utah applies a stringent substantive unconscionability analysis that

would only find an agreement to be one-sided under egregious circumstances. Under

Utah law, for example, courts "permit[ ] parties to enter into unreasonable contracts or

contracts leading to a hardship on one party" provided there is not a total "absence of

meaningful choice" and the terms do not "oppress or unfairly surprise an innocent party."

*Dan's Food Stores*, 972 P.2d at 402 (internal quotation marks omitted) (quoting *Resource*

*Mgmt. Co. v. Weston. Ranch & Livestock Co*., 706 P.2d 1028, 1041-42 (Utah 1985). Nu

40

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

Skin points out that some of the language used in Washington decisions to describe its approach to substantive conscionability is similar to language used by Utah courts. *See, e.g.*, *Fred Lind Manor*, 153 Wn.2d at 344-45 (quoting *Nelson*, 127 Wn.2d at 131) ("'Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability."). In application, though, it is enough for Washington courts that contract terms are overly harsh or one-sided, unlike the operative Utah standard. *Compare, e.g.*, *Burnett*, 196 Wn.2d at 59-60 (explaining that employment agreement was one-sided where it required the employee to submit to internal dispute resolution and arbitration, but not the employer, because employees have less bargaining power) *with Miller v. Corinthian Colls., Inc.*, 769 F. Supp. 2d 1336, 1345 (D. Utah 2011) (holding that in Utah, a similar one-sided arbitration agreement that applied against college students, but not education institution, was not substantively unconscionable). As observed by the federal district court for the Western District of Washington in *Luna*, "[p]hrases such as 'shocks the conscience' and 'monstrously harsh' found their way into the law of unconscionability from a time when it was felt that individuals should almost always be held to contracts they signed, regardless of the disparity in sophistication between the parties and the one-sidedness of the term." *Luna*, 236 F. Supp. 2d at 1183. The "more enlightened view," according to the federal court, which "Washington courts have recognized," is that it makes a

41

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

difference whether the plaintiff is a consumer rather than a substantial business concern.

*Id.*

An actual conflict exists between the laws of Washington and Utah that could easily result in a different outcome depending on which law is applied. We therefore engage in the choice of law analysis provided by the *Restatement*.

> 2.  The conditions that support setting aside a choice of law provision exist here

We turn to sections 6 and 187 of the *Restatement*. Section 6 provides that if the legislature has provided a statutory directive on choice of law, then, subject to constitutional restrictions, the court will follow it. *Restatement* § 6(1). Statutes that are expressly directed to choice of law in this way are "comparatively few in number," however, so "[a] court will rarely find that a question of choice of law is explicitly covered by statute." *Id.* cmts. a & b.

When there is no such directive (and there is no such directive in this case), factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. *Id.* § 6(2).

42

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

Section 187(2)(b) of the *Restatement* applies here, and provides that the

contracted-for choice of law will be applied unless three conditions exist:

> [A]pplication of the law of the chosen state would be contrary to a
> fundamental policy of a state which has a materially greater interest than
> the chosen state in the determination of the particular issue and which,
> under the rule of § 188, would be the state of the applicable law in the
> absence of an effective choice of law by the parties.

In *McKee*, our Supreme Court rearranged these three conditions to an order that is

useful because it first addresses the broad section 188 analysis before turning to the two

other, narrower, section 187 conditions. Thus reordered, *McKee* holds that we will set

aside a choice of law clause "[1] if, without the provision, Washington law would apply;

[2] if the chosen state's law violates a fundamental public policy of Washington; and

[3] if Washington's interest in the determination of the issue materially outweighs the

chosen state's interest." *McKee*, 164 Wn.2d at 384. Unless all three conditions are met,

we will enforce the choice of law provision. *Id.*

> a.  Washington law would apply were there no choice of law
>     provision

In determining whether Washington law would apply absent the provision, we

apply the "most significant relationship test" from § 188 of the *Restatement*. *Id.* at 384.

That test looks to "(a) the place of contracting, (b) the place of negotiation of the contract,

(c) the place of performance, (d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the

43

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

parties." *Restatement* § 188(2)(a)-(e). The contacts with the states are used as guidelines to determine the interests of each state that are presented by the transaction. *Cox v. Lewiston Grain Growers, Inc.*, 86 Wn. App. 357, 366, 936 P.2d 1191 (1997).

Looking first at the place of contracting and negotiation of the contract, the declaration of Nu Skin's compliance director identified the date on which each of the Plaintiffs executed the Distribution Agreement, but not where they were executed. The "Acceptance of Contract" provision of the Distributor Agreement implies that agreements are frequently, if not always, executed at a location remote from Nu Skin's offices and personnel. CP at 137 (boldface omitted). The Distributor Agreement is not signed by any representative of Nu Skin, and it contemplates (i) an electronic signature by the distributor, through Internet sign-up, (ii) that Nu Skin will "receive[ ] and accept[ ]" a hard copy of the agreement, or (iii) that the agreement will be deemed established sometime after "a temporary account is set up" by the distributor. CP at 137. A distributor who contracts electronically or by sending a hard copy of their agreement to Nu Skin would be expected to do so from the state of their residence. Comments to the *Restatement* state that "[s]tanding alone, the place of contracting is a relatively insignificant contact." *Restatement* § 188 cmt. e.

The place of negotiation can be a significant contact, particularly where there is a single place of negotiation, such as in-person negotiation. *Id.* There is no evidence that

44

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

there was ever any "negotiation" of the Distributor Agreements. The Contract and Nu Skin's briefing affirmatively establish that policies and modifications are never negotiated or signed. Instead, notice is given and, absent distributor rejection and cancellation of the distributorship, the policies and any modifications are deemed accepted. The distributor's receipt of notice and failure to object would, again, presumably take place in their state of residence.

"The state where performance is to occur under a contract has an obvious interest in the nature of the performance and in the party who is to perform." *Id.* There is no evidence that distributors perform their sales and marketing activities in Utah. The Distributor Agreement includes the distributor's acknowledgment that "I am an independent contractor" and as such, "will . . . be self-employed . . . be paid Bonuses based on purchases and sales and not the number of hours that I work [and] be subject to entrepreneurial risk." CP at 136. Absent other evidence, the distributor's performance of the Contract would presumably take place largely, if not entirely, in the state of their residence or perhaps across any nearby state line.

The situs of the "subject matter of the contract" is a factor when the contract deals with a specific physical thing or protects against a localized risk. *Restatement* § 188 cmt. e (emphasis omitted). The contract in this case does not involve that type of subject matter.

45

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

The significance of the parties' domicile, residence, and principal place of business depends largely on the issue involved and on the extent to which those contacts are grouped with other contacts. The parties to this lawsuit hail from 9 different states.[8] While the most common domiciles are Utah and Washington, they do not predominate. Only 5 of the over 20 parties are either domiciled in Utah or have their principal place of business there. Four of the 9 plaintiffs are residents of Washington.

The contacts per se are not what is important; it is their "relative importance with respect to the particular issue" in the case and the *Restatement* § 6 factors that we examine to determine the most significant relationship. *Restatement* § 188(2). As the court observed in *Pope*, "[W]e weigh the contacts with potentially interested states under the circumstances and in the context of relevant policy considerations." 19 Wn. App. 2d at 129. In *Pope*, the circumstances presented were settlement agreements that insurance companies reached to resolve their coverage liability for the estimated $22 million cost of cleaning up a mill site, and whether those agreements were void under Washington's "anti-annulment" statute. *Id.* at 120-23. The anti-annulment statute voids agreements between an insurer and insured that attempt to retroactively cancel or otherwise annul contractual liability after a potentially covered injury to a third party has occurred. *Id.* at 118. The Washington policies at issue in *Pope* were not only the state's policy against

---

[8] Washington, Utah, Oklahoma, California, Colorado, New York, Nevada, Nebraska, and Florida.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

the forbidden annulment, but also what the court recognized as Washington's "paramount interest in environmental cleanup and pollution remediation." *Id.* at 118-19. The state's interest in cleanup and remediation heightened the importance that the anti-annulment policy be applied.

Focusing on the particular issue in this case, under Washington law, "if [a contract] is unenforceable as unconscionable, then it violates Washington's fundamental public policy." *Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1245 (W.D. Wash. 2007), *vacated on remand*, No. C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 29, 2009). And in *Eckstein v. East Coast Facilities Inc.*, the federal district court for the Western District of Washington held that since it is more difficult to prove that an arbitration provision is unconscionable under Pennsylvania law than under Washington law, application of Pennsylvania law would "undermine Washington's fundamental policy in favor of protecting against enforcement of unconscionable arbitration agreements." No. C21-257 MJP, 2021 WL 3173044, at *4 (W.D. Wash. July 26, 2021).

Here, similar to *Pope*, the immediately relevant policy is the Washington policy that would invalidate substantively or procedurally unconscionable dispute resolution provisions. But the policy reflected in statutes that protect individuals from unfair or deceptive trade practices heightens the importance of invalidating unconscionable terms. Washington has a "vital interest in regulating . . . business within its territorial boundaries

47

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

so as to insure fair business practices." *Granite Equip. Leasing Corp. v. Hutton*, 84
Wn.2d 320, 326, 525 P.2d 223 (1974), *accord Cox*, 86 Wn. App. at 366. In *Dix*, which
presented a similar but distinguishable analysis applied to all forum selection clauses, our
Supreme Court emphasized "the importance of the private right of action to enforce the
CPA for the protection of all the citizens of the state," which would be violated by a
forum selection clause that seriously impaired a plaintiff's ability to advance a CPA
claim. 160 Wn.2d 826, 837, 161 P.3d 1016 (2007). While no published decision has
addressed public policy implications of the Antipyramid Promotional Scheme Act, the
legislature found in enacting it that the practices forbidden by the act "are matters vitally
affecting the public interest for the purpose of applying the consumer protection act."
RCW 19.275.040.

As comment c to *Restatement* § 188 observes, "the state where a party to the
contract is domiciled has an obvious interest in the application of its contract rule
designed to protect that party against the unfair use of superior bargaining power. And a
state where a contract provides that a given business practice is to be pursued has an
obvious interest in the application of its rule designed to regulate or to deter that business
practice."

By contrast, Utah is the domicile or principal place of business of five parties, but
two of those parties are Plaintiffs, and it is in the Utah Plaintiffs' interest that

48

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

Washington's stronger protection against unconscionable terms be applied. Utah's contacts otherwise include the Utah domicile or principal place of business of three defendants, but two—Nu Skin Enterprises, Inc. and Pharmanex, LLC—are global businesses that purposefully engaged with Washington residents with the objective of recruiting distributors and retailing its products to Washington consumers. The third, Utah defendant Tyler Bennett, is alleged by the complaint to have been a prolific speaker marketing Nu Skin, who participated in presentations in Spokane and Spokane Valley. As for the public policies at issue, Utah engages in its own regulation of unfair trade practices and pyramid promotional schemes, albeit without providing the same remedies available under Washington's CPA and Antipyramid Promotional Scheme Act. *See* Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 through -23, and the Utah Pyramid Scheme Act, Utah Code Ann. §§ 76-6a-101 through -104.

Nu Skin can assert that having contracted for the application of Utah law, it has an interest in certainty and the protection of justified expectations, but while those interests are deserving of great weight when the choice of law is freely-negotiated by parties with equal bargaining power, they are entitled to far less weight where, as here, the choice of law was unilaterally imposed. As explained by comment b to *Restatement* § 187,

> A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain

49

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

> about its terms. . . .  Choice-of-law provisions contained in such contracts are usually respected.  Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.

Under the *Restatement* § 188 analysis, Washington has the most significant relationship to the transaction and the parties with respect to the unconscionability issue.

          b.       Utah law is contrary to a fundamental policy of Washington and Washington's interest in determining the issue materially outweighs Utah's interest

Having determined that Washington law would apply if there were no choice of law provision, we turn to the two remaining § 187 conditions: whether application of the law of Utah would be contrary to a fundamental policy of Washington, and whether Washington has a materially greater interest than Utah in the determination of whether terms of the Contract are unconscionable.  Comments to the *Restatement* observe that a forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether it has a materially greater interest than the state of the chosen law in determining the particular issue. *Restatement* § 187 cmt. g.

For reasons discussed in the § 188 analysis, the application of Utah law would contravene a fundamental Washington policy: Washington's policy of protecting plaintiffs against agreements that are either procedurally or substantively unconscionable,

50

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

including by being one-sided and harsh. The violation of Washington policy is heightened if the unconscionable agreements frustrate the ability of a plaintiff to recover for injury from unfair or deceptive trade practices.

Washington's interest materially outweighs Utah's interest. Courts applying the choice of law principles provided by *Restatement* § 6 have recognized that where consumer protection laws are at issue, a state where the alleged harm occurs has the stronger interest in applying its laws than does a state from which the deception emanated. "To conclude otherwise would frustrate the 'basic policies underlying' consumer protection laws" by permitting a nationwide company to "choose the consumer-protection law they like best by locating in a State that demands the least." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (quoting *Restatement* § 6(2)(e)), *accord Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 408 (6th Cir. 2018).

      C.     *If terms of the Contract are unconscionable under Washington law, that is relevant to whether the selection of Utah as the forum should be enforced*

In finding that the superior court committed probable error, and granting discretionary review, our commissioner accepted Nu Skin's argument that there was no showing that Utah is procedurally incapable of hearing the Plaintiffs' claims under Washington's consumer protection laws, although she also noted that the Contract's choice of law provision could present an obstacle. Comm'r's Ruling at 9. We hold that

51

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

the alleged unconscionability of dispute resolution terms of the parties' Contract is relevant to the enforceability of the forum selection clause. If the clause is enforced, the Utah court will decide whether the challenged dispute resolution terms are unconscionable, unenforceable, and severable, and it can be expected to apply Utah law. If the Utah court compels arbitration as provided by the agreement, the Plaintiffs' claims will be resolved not by the court, but in arbitration conducted by Nu Skin according to the terms of its Mandatory and Binding Arbitration Agreement and Policies.

A finding by the superior court that dispute resolution provisions of the Contract are unconscionable under Washington law could be relevant to two bases for denying enforcement of the Contract's forum selection clause. It could be relevant to whether the ultimate forum—the contracted-for arbitration—is so unfair as, for all practical purposes, to deprive the plaintiff of a remedy or of its day in court. It could also be relevant to whether enforcing a clause that will ultimately require the Plaintiffs' claims to be resolved by the contracted-for arbitration would contravene a strong public policy of Washington. Both parties deserve to be heard on these issues of unconscionability, including the resolution of any factual disputes that might be presented as the issues are examined in more detail.

We resolve Nu Skin's assignments of error as follows:

52

No. 38842-5-III
*Raab, et al. v. Nu Skin Enterprises, Inc., et al.*

We reject its assignment of error to the superior court's refusal to enforce the Utah forum selection clause,

We reject in part its assignment of error to the superior court's determination that Spokane County is "the proper venue for this case" based on the public policy interest identified by the court. We hold that Spokane County was a proper venue based on the allegations of the complaint but reverse and remand the issue of the enforceability of the forum selection clause for further proceedings, and

We reverse the superior court's determination that the arbitration agreement does not apply because the complaint is not a "Dispute" within the meaning of the Contract.

We remand for further proceedings consistent with this opinion.

Siddoway, J.P.T.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.